Essex, Plaintiff in error, vs. The State, Defendant in error.

*December 6, 1919—January 13, 1920.*

*Criminal law: Instructions on question of intent in statutory offenses: Intent a jury question: Food: Oleomargarine: Imitation of yellow butter.*

1. While ordinarily it is sufficient, in defining a statutory offense, to define it in the language of the statute, where the guilt or innocence of the defendant depends on the question of intent, and instructions are properly requested on the subject, they should be given.

2. In order to establish the guilt of one accused of violating sec. 4607c, Stats., prohibiting the sale of oleomargarine in imitation of butter, it is necessary for the state to offer evidence tending to establish the fact that the article sold by the defendant was made with intent that the product, when completed, should be in imitation of yellow butter.

3. This intent, or the fact of conscious imitation of yellow butter, may be inferred, in a prosecution under said sec. 4607c, from the fact that the oleomargarine sold was in imitation of yellow butter.

4. While defendants in criminal cases are permitted to offer evidence as to their intent in the doing of a particular act, neither the court nor the jury is concluded by such evidence.

5. The term "yellow butter," in sec. 4607c, prohibiting the sale of oleomargarine which is in imitation of yellow butter, means butter of that shade or color which is usually and ordinarily described as yellow, as distinguished from pale straw, light yellow, or any shade of yellow lighter than that usually and commonly referred to as yellow butter, such as is produced in the summer time.

Error to review a judgment of the superior court of Dane county: August C. Hoppmann, Judge. *Reversed.*

Plaintiff in error, hereinafter designated as the defendant, was found guilty of violating sec. 4607c; Stats. 1917, prohibiting the sale of oleomargarine which shall be in imitation of yellow butter, and prosecutes this proceeding to review the judgment of the superior court of Dane county.

For the plaintiff in error there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Harold M. Wilkie.*

For the defendant in error there was a brief by the *Attorney General, M. B. Olbrich,* deputy attorney general, and *J. F. Baker,* assistant attorney general, and oral argument by *Mr. Baker* and *Mr. Roman Heilman,* district attorney of Dane county.

ROSENBERRY, J.    Two principal questions are presented: Did the court err in refusing to instruct the jury that sec. 4607*c,* Stats., is intended to prohibit the sale of oleomargarine made in intentional or conscious imitation of yellow butter, and that it is not intended to prohibit and does not prohibit the sale of oleomargarine not so made? and second, Did the court err in refusing to instruct the jury, as requested, that sec. 4607*c* did not prohibit the sale of oleomargarine of yellowish tinge or color, but not of that shade of yellow which is found in natural butter which is commonly and ordinarily described as *yellow* butter?

"Sec. 4607*c,* Stats. 1898, as amended by ch. 151, Laws 1901, under which the defendants were convicted, and so far as material here, provides that any person who 'shall by himself, his agent or servant, render or manufacture, sell or solicit or accept orders for, ship, consign, offer or expose for sale, or have in posses ion with intent to sell, any article, product or compound made wholly or partly out of any fat oil or oleaginous substance or compound thereof, not produced from unadulterated milk or cream from the same, and without the admixture or addition of any fat foreign to said milk or cream, which shall be in imitation of yellow butter produced from such milk or cream with or without coloring matter,' shall be punished, etc.    'Nothing in this section shall be construed to prohibit the manufacture or sale of oleomargarine in a separate and distinct form and in such manner as will advise the consumer of its real character, and free from coloration or ingredient that causes it to look like butter.' "    *Meyer v. State,* 134 Wis. 156, 114 N. W. 501.

The statute in question is peculiar and unusual in that it makes the intent of a third party the test of the guilt or innocence of the defendant. This peculiarity arises out of the language used in the statute. The statute was so construed at the January term, 1908, and although the legislature has been in regular session six times, no amendment has been made to the statute as so construed.

1. Ordinarily it is sufficient, in defining a statutory offense, to define it in the language of the statute. *Dillon v. State,* 137 Wis. 655, 119 N. W. 352; *State v. Bresee,* 137 Iowa, 673, 114 N. W. 45, 24 L. R. A. N. s. 103; *Giskie v. State,* 71 Wis. 612, 38 N. W. 334. Where, however, as in this case, the guilt or innocence of the defendant depends upon the question of intent, and instructions are properly requested upon that subject, they should be given, and it is error to refuse them. *Koscak v. State,* 160 Wis. 255, 152 N. W. 181.

It was said in *Meyer v. State,* 134 Wis. 156, 114 N. W. 501: "The words 'which shall be in imitation of,' used in describing the contraband compound, imply a conscious imitation in the manufacture thereof." Therefore, in order to establish the guilt of the defendant, it was necessary for the state in this case to offer evidence tending to establish the fact that the article sold by the defendant was made with the intent that the product when completed should be in imitation of yellow butter. This intent, or the fact of conscious imitation, may be inferred from the fact that the compound sold is in imitation of yellow butter, and if there be testimony tending to show that the compound sold was not made with the intent to imitate yellow butter, then the question of intent is for the jury upon the whole case. While defendants in criminal cases are permitted to offer evidence as to what their intent was in the doing of a particular act, neither the court nor the jury is concluded by such evidence. It is to be considered by the jury along with all other evidence in determining the intent, in this case not of the defendant but of the maker of the compound sold.

We think the jury should have been so instructed by the trial court.

2. It appears from the evidence received in this case that oleomargarine made in the usual and customary way and from the ingredients which are usually and ordinarily combined in its manufacture will be of some shade of yellow; that as a practical manufacturing proposition pure white oleomargarine cannot be produced. It also appears from the evidence in this case that natural butter—that is, butter produced from unadulterated milk and cream without the addition of dyes—varies in color from a whitish, light pale straw-color to deep orange yellow. Sec. 4607c expressly permits the sale of oleomargarine, and it must be presumed that the legislature knew and understood that oleomargarine when manufactured in the usual and ordinary way, out of the materials commonly combined to produce it, would be of the color of some kinds of butter. We need not determine in this case whether or not the legislature had power to prohibit the sale of oleomargarine which resembles in color any shade of natural butter; they did not attempt to do that in this statute. Its sale is prohibited only when it is in conscious imitation of yellow butter. It is impossible to put upon paper or into language a definition of yellow butter, but it is possible by a process of exclusion to make the term reasonably definite. As was said in the *Meyer Case, supra,* "It would be adding to the statute to construe it as prohibiting the sale of a compound in imitation of any light shade of yellow butter." Therefore it seems reasonable that the jury should be so instructed that they will have, approximately at least, the same standard by which to determine the guilt or innocence of the defendant. Otherwise one juror might agree to a verdict of guilty because he thought the compound sold resembled butter of a very light shade, another of a still deeper or darker shade—in fact each juror might have a different standard; and therefore, while no two agreed as to the meaning of the term *yellow butter,* they might all agree that the defendant was guilty. We think,

therefore, it was error for the trial court to refuse the requested instruction.

The jury should have been instructed that by the term *yellow butter* was meant that shade or color of butter which is usually and ordinarily described as yellow, as distinguished from pale straw, light yellow, or any other shade of yellow lighter than that usually and commonly referred to as yellow butter, which the evidence in this case shows to be butter of the color usually and commonly produced in the summer and sometimes known and described as "June butter." While such an instruction leaves much to be desired in the way of definiteness, it at least makes more definite a term which, as was said in the *Meyer Case,* is incapable of definition.

*By the Court.*—Judgment reversed, and case remanded for a new trial.