GLASHEEN, Plaintiff in error, vs. THE STATE, Defendant in error.

*October 24—November 17, 1925.*

*Criminal law: Defining offense in words of statute: Sufficiency: Where intent is involved: Instructions: Embezzlement of public funds: Intention to return converted moneys: Materiality.*

1. Ordinarily it is sufficient, in defining a statutory offense, to define it in the language of the statute; but where the guilt or innocence of the accused depends upon his intent, and instructions are properly requested on that subject, they should be given. p. 271.
2. Under a statute making refusal of an officer to pay over money in his custody and possession by virtue of his office on demand *prima facie* evidence of fraudulent intent, the accused may rebut such presumption by proof of circumstances which would disprove conversion. p. 273.

3. Where defendant deliberately and intentionally converted funds of which he was custodian to his own use, the offense of embezzlement was complete when the conversion took place; and the fact that defendant thereafter expected to restore the money to the public treasury from which he had wrongfully taken it was immaterial.　p. 274.

ERROR to review a judgment of the municipal court of Outagamie county: ALBERT M. SPENCER, Judge.　*Affirmed.*

Embezzlement.　The plaintiff in error, hereinafter called the defendant, a man fifty-nine years of age, born and reared in the town in which school district number 1 of the town of Buchanan is situated, used $646.98 of the funds belonging to the school district to pay interest on a mortgage and taxes upon a farm owned by himself and brother in order to avoid foreclosure of a mortgage amounting to $7,800.　The conversion took place in the spring of 1923. The defendant expected to repay the money by the sale of hay.　In the fall of 1923 he left home to work in the woods in the north, instructing his brother to sell the hay, pay an order outstanding issued to Miss Kavanaugh, a teacher, and put the remainder of the money in the bank for the credit of the district.　This the brother failed to do.　He sold the hay but squandered the money.　In the early spring of 1924 defendant was advised that he had been removed as treasurer of the district and demand was made upon him for the delivery of the books.　In response to this demand he wrote his brother, directing him to turn over the books to Mrs. Pfeifer, the new treasurer.　He returned home in March, 1924, bringing with him $100 of his earnings.　Upon his return his brother told him that he had sold the hay and spent the money, which was the first information the defendant had that the money had not been replaced.　On April 30, 1924, the defendant admitted to the officers of the district that he was short, but his books did not at that time show the true amount of the shortage.　Three items had been marked paid in the treasurer's books kept by the

defendant, one to Leone Kavanaugh for $195, another for books of $5.12, and one to George Haas, clerk, for $17.66, which were in fact never paid. He promised the officers to pay up the shortage. No payment was made, however, and this prosecution was begun in August, 1924. The defendant then promised to pay up his shortage when he sold the 1924 hay crop. Trial was delayed from time to time in order to give the defendant an opportunity to make good his promises of repayment. After discovery of the fact that the 1924 hay crop was mortgaged, the public authorities proceeded with the prosecution. Upon the first trial the jury found him guilty. The verdict was set aside on account of errors and a new trial awarded, which also resulted in a verdict of guilty. The defendant was thereupon sentenced to two years in the state prison at Waupun. Writ of error was sued out of this court to review the judgment and sentence.

For the plaintiff in error there was a brief by *Ryan & Cary* of Appleton, and oral argument by *Thomas H. Ryan.*

For the defendant in error there was a brief by *John A. Lonsdorf,* district attorney of Outagamie county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Lonsdorf* and *Mr. Messerschmidt.*

ROSENBERRY, J. It is the contention of the defendant that the court erred in instructing the jury and that the instructions given were prejudicial and erroneous. Perhaps the argument can be best epitomized by a statement taken from the brief of defendant's counsel:

"The evidence shows that one of the elements of the statutory offense of embezzlement is lacking, or, to say the least, is in dispute, namely, the fraudulent intent to make an absolute appropriation as contradistinguished from a use without any design to defraud the owner or deprive him of his property."

It is contended that the failure of the court so to instruct the jury was error. The court charged the jury as follows:

"You are instructed that in this case the evidence stands without any contradiction whatever, that *Michael Glasheen,* the defendant, as treasurer of said school district No. 1, as alleged in the information, had in his possession the sum of $646.98, lawful money of the United States, belonging to said school district of which he was treasurer, and that he converted and used the same to his own use and benefit. Sec. 4418 of the Revised Statutes of 1923 reads as follows:

" 'Any person who shall embezzle or fraudulently convert to his own use or the use of any other person except the owner thereof, *and* shall take, carry away, or secrete, with intent to convert to his own use or the use of any person except the owner thereof, *is guilty of embezzlement.'*

"The law of our state further provides (sec. 4419) that: 'The refusal or wilful neglect of any officer or other person named in the last preceding section [namely, agent or officer of a corporation] to pay over any moneys or to deliver any property in his care, custody or possession, by virtue of his office or employment upon the demand thereof by the proper person, copartnership, corporation or authority entitled to receive the same, or as required by law, or the selling, mortgaging or pledging of any such property, or the loaning or depositing of any such moneys, by such officer or other person, for his own gain, profit or advantage without special authority shall in each case be *prima facie* evidence of the embezzlement thereof; and every public officer shall promptly pay over, as required by law, the same moneys received and held by him by virtue of his office and the whole thereof, and he shall not be allowed to set up or plead any account or claim for his services or fees as an offset or counterclaim against such payment.' "

These instructions are substantially in the language of the statute. Ordinarily it is sufficient, in defining a statutory offense, to define it in the language of the statute. *Essex v. State,* 170 Wis. 512, 175 N. W. 795, and cases there cited. Where, however, the guilt or innocence of the accused depends upon the intent, and instructions are properly re-

quested upon that subject, they should be given.    *Koscak v. State,* 160 Wis. 255, 152 N. W. 181.

In this case every material fact necessary to sustain a verdict of guilty was conceded with the single exception that it was claimed by the defendant that the conversion made was without wrongful or felonious intent.    The defendant was represented by able and zealous counsel.    It is scarcely conceivable that under the circumstances in this case the jury did not have in mind that in order to convict the defendant they must find beyond a reasonable doubt that the defendant took the money with wrongful and felonious intent.    Upon that point the court instructed the jury as follows:

"You are instructed that before you can find the defendant guilty you must be satisfied from all the evidence and circumstances in the case, beyond a reasonable doubt, that at the time the defendant took the money belonging to said school district and appropriated it to his own use he did so with a fraudulent and felonious intent."

The argument on behalf of the defendant may be summarized as follows: In order to convict a person of embezzlement an unlawful and felonious intent must be proven; therefore, if it appears that at the time of the conversion the accused had an honest intent to restore the money at some future time and because of misfortune was unable to do so, a jury is warranted in finding that the conversion took place without any felonious or unlawful intent.    Whatever may be the case as between principal and agent or in other relationships where accounts may be unsettled, we know of no rule of law which sanctions the conduct of a public officer who intentionally converts public funds intrusted to his care to his own use.

As was said in *State v. Kortgaard,* 62 Minn. 7, 64 N. W. 51:

"If the fraudulent intent is not to be presumed from the commission of an unlawful act, it would be very difficult in

any case to prove the intent to embezzle on the part of a bank officer who had unlawfully appropriated bank funds to his own use. When an act, in itself indifferent, becomes criminal only when done with a particular intent, the intent must be proved; but when the act is, in itself, unlawful, the criminal intent is presumed from the intentional commission of the act."

The statute makes the refusal of the officer to pay upon demand *prima facie* evidence of fraudulent intent. The accused may no doubt rebut this presumption by proof that the money was destroyed by accident or was taken from him against his consent by superior force, or proof of like circumstance which would disprove conversion. Diligent search reveals no case where proof of intention to return funds deliberately and intentionally taken is held to rebut the statutory presumption. The decisions hold the opposite. See *State v. Leicham*, 41 Wis. 565. Such is the holding in most jurisdictions. See note in 52 L. R. A. N. s. 1018, note *b*, Embezzlement, and cases cited.

In this case the defendant was fully aware of the fact that he was using the funds belonging to the school district for his own purposes unlawfully. The fact that the school board had knowledge of such unlawful use could not excuse or justify him. It might involve officers having such knowledge in moral if not legal delinquency, but it cannot excuse the officer. The statute has foreclosed a public officer from setting up any claim of title to public funds in his possession, and it is his duty to pay them upon demand by the proper authority without any diminution for fees or other claims. It has been held that one unlawfully converting public funds is guilty of embezzlement even though he restores them before the wrongful conversion is discovered. *State v. Baxter*, 89 Ohio St. 269, 104 N. E. 331, 52 L. R. A. N. s. 1019.

The evident intent and purpose of the statute was to safeguard public funds which should be kept inviolate by those to whose care they are intrusted. No plea of economic necessity can justify conversion by a public officer of public

funds to his own use.    Those who assume the custodianship of public funds must be presumed to do so with a knowledge of their duties and liabilities as such.    Ignorance or failure to appreciate the legal relationship involved may in some cases affect the moral but cannot affect the legal aspects of the conversion.    In this case the defendant deliberately and intentionally converted the funds of which he was custodian to his own use.    From that the law infers a wrongful and felonious intent.    When the conversion took place the offense was complete, and the fact that he thereafter expected to restore the money to the public treasury from which he had wrongfully taken it does not acquit him in the eyes of the law.    If the argument made in this case was to prevail and the secret intention of a public officer to restore funds unlawfully converted to his own use was held to be a defense, little protection to public funds from spoliation by dishonest and hard-pressed custodians would remain.    The requests for instructions were not a correct statement of the law and it was not error to refuse them.

The default of the defendant in this case seems to have occurred partially from a failure to appreciate his duty as a custodian of public funds, partially because he expected to restore the moneys before he was called upon to pay any considerable amount of them, partially because he relied upon his brother who disappointed him; but these considerations, while they may appeal to our sympathy, cannot be permitted to disturb the well established law upon the subject of embezzlement.

*By the Court.*—Judgment affirmed.