JOHN F. JELKE COMPANY, Respondent, vs. EMERY, as Dairy and Food Commissioner, Appellant.

WISCONSIN FOOD PRODUCTS COMPANY, Respondent, vs. SAME, Appellant.

PETRI, Respondent, vs. SAME, Appellant.

HANLEY & MURPHY COMPANY, Respondent, vs. SAME, Appellant.

*April 9—June 20, 1927.*

*Food: Statute prohibiting manufacture and sale of oleomargarine: Validity.*

1. In determining the validity of ch. 279, Laws of 1925, prohibiting the manufacture and sale of a butter substitute when milk or milk fats are combined with any fat, oil, or oleaginous substance, the court will regard it as a statute prohibiting the sale and manufacture of oleomargarine as that term is understood in law and in commerce.  p. 316.

2. Ch. 279, Laws of 1925, is invalid as an unlawful exercise of the police power, since it prohibits the sale of a healthful, nutritious food, and such prohibition is not necessary to protect the public health, morals, or safety, to prevent fraud, or to promote the public welfare.  pp. 318, 324.

3. Courts take judicial notice that oleomargarine is a healthful, nutritious food.  p. 321.

4. In a doubtful case the final responsibility of supporting the constitution is with the courts; but in a case reasonably plain it is the duty of every officer to support it, even though his act may have undesirable consequences to himself.  p. 322.

5. Ch. 279, Laws of 1925, cannot be justified on the ground that the legislature may prohibit the manufacture and sale of oleomargarine to protect the dairy industry from unfair competition.  p. 322.

6. Where a proper exercise of the police power results in advantage to a particular class and to the disadvantage of others, and that is the principal purpose of the measure, the courts will look behind even the declared intent of legislatures and relieve citizens against oppressive acts, where the primary purpose is not the protection of the public health, safety, or morals. p. 323.

APPEAL from a judgment of the circuit court for Dane county: AUGUST C. HOPPMANN, Circuit Judge. *Affirmed.*

Injunction. The plaintiff *John F. Jelke Company* is a manufacturer of oleomargarine, with its principal place of business and factory in Chicago, Illinois. It sells oleomargarine to wholesalers and retailers in the state of Wisconsin. The plaintiff *Wisconsin Food Products Company* is a corporation engaged in the business of manufacturing and selling oleomargarine, having its factory and place of business at Jefferson, Wisconsin. The plaintiff *Hanley & Murphy Company* is a corporation engaged in the wholesale grocery business and having its place of business at Janesville, Wisconsin. It sells oleomargarine at wholesale in the city of Janesville and in the territory surrounding Janesville. The plaintiff *Charles Petri* is a retail grocer whose place of business is in Milwaukee, Wisconsin. He sells oleomargarine at retail. The plaintiffs sought to enjoin the enforcement by the dairy and food commissioner of ch. 279 of the Laws of 1925. The four actions were begun in order that every phase of the issue might be presented. They were subsequently consolidated and tried as a single action.

The complaint sets forth the history of oleomargarine, the different types of oleomargarine, and the various processes that are employed in the manufacture of oleomargarine. It is alleged that oleomargarine is a wholesome food product; that in its manufacture and sale in Wisconsin all state and federal laws and regulations are complied with, and that the sale of oleomargarine is free from fraud. It sets out ch. 279 of the Laws of 1925 and alleges that it violates both the

state and the federal constitution, that it is unreasonable, arbitrary, oppressive, and discriminatory, and it denies to the plaintiffs the equal protection of the law; that it is an unlawful interference with interstate commerce; that it takes property without due process of law, and that it is class legislation.

The answer put in issue matters alleged in the complaint except the allegations as to the history of oleomargarine and the method of its manufacture.

Upon the trial a considerable amount of expert testimony was taken. The court made and filed findings of fact. Findings (1), (2), (3), and (4) relate to the corporate character and kind of business carried on by the plaintiffs. In the fifth finding defendant is found to be the dairy and food commissioner of the state of Wisconsin and that it was his intention to strictly enforce the provisions of ch. 279 of the Laws of 1925 and thereby prevent the manufacture and sale of oleomargarine where the same has been made by the use of either whole or skimmed milk as an ingredient.

It is further found that none of the plaintiffs have sold oleomargarine in violation of law.

It is further found:

"(7) That oleomargarine, as manufactured and sold in Wisconsin, is of two kinds, to wit:

"(a) The animal-fat type, wherein the ordinary ingredients consist of oleo-oil, neutral lard, and refined cotton-seed oil or peanut oil, all of which are emulsified in ripened whole milk or skimmed milk and to which salt is added. That this type of oleomargarine has been sold in Wisconsin for over thirty years last past.

"(b) The nut type, wherein the ordinary ingredients consist of refined cocoanut oil and refined cotton-seed oil which are emulsified in ripened skimmed milk to which salt is added. That this type of oleomargarine has been manufactured and sold in Wisconsin for more than ten years last past.

"(8) That oleomargarine, as generally manufactured and sold in the United States and in the state of Wisconsin, has

John F. Jelke Co. v. Emery, 193 Wis. 311.

always contained either ripened whole milk or ripened skimmed milk. That such milk is used for the purpose of getting a proper emulsion, the giving of texture and a palatable flavor. That no other satisfactory emulsifying agent than milk has ever been discovered.

"(9) That oleomargarine, as manufactured and sold in Wisconsin, is nearly white in color. That it is not artificially colored. That the color of oleomargarine does not resemble that of the butter of commerce.

"(10) That oleomargarine has been in general use by that trade-mark name throughout the United States for more than thirty years last past and is a well-known article of food. That during practically all of that time it has been used and is now being used by all classes of people both for cooking and culinary purposes, baking, and as a spread for bread.

"(11) That the materials used in the manufacture of oleomargarine are of good quality, pure, and contain no elements which are deleterious to health. That the product that results is a wholesome and nutritious food product. That its caloric value is almost equal to that of butter.

"(12) That oleomargarine has not been sold as for butter in Wisconsin for many years prior to 1925. That there has been no fraud or deception practiced in its sale in Wisconsin for many years. That it is advertised, held out, and sold under its own name. That the ordinary oleomargarine of commerce has for years prior to 1925 been sold in Wisconsin in prints which are wrapped in waxed or oiled paper, inclosed in a paper carton, and on both sides of which carton appears the word 'oleomargarine,' in plain letters in not less than twenty-point plain Gothic type. That there have been no complaints of fraudulent advertisements or sales in Wisconsin for many years prior to 1925.

"(13) That for a number of years last past oleomargarine has sold for a price of ranging from forty to sixty per cent. of the retail price of butter.

"(14) That during the fiscal year ending June 30, 1924, there were sixty-six wholesalers of oleomargarine and 5,223 retailers in the state of Wisconsin."

The court concluded as a matter of law that ch. 279 of

the Laws of 1925 is arbitrary, unreasonable, and discriminatory; that the act denies to complainants the right to carry on a lawful business in a lawful manner; that it constitutes an unlawful interference with interstate commerce; that it is in violation of the constitution of the state of Wisconsin and of the United States.

Judgment was entered accordingly perpetually enjoining the defendant dairy and food commissioner and his agents from enforcing the act, from which judgment the defendant appeals.

*John W. Reynolds,* attorney general, and *Suel O. Arnold,* assistant attorney general, for the appellant.

For the respondents there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Ralph W. Jackman.*

. ROSENBERRY, J.   Ch. 279, Laws of 1925, is as follows:

"An act to create section 352.365 of the statutes, relating to the manufacture and sale of oleomargarine and other substitutes for butter.

*"The People of the State of Wisconsin, represented in Senate and Assembly, do enact as follows:*

"Section 1. A new section is added to the statutes to read: 352.365 (1) It shall be unlawful for any person, firm or corporation, by himself, his servant or agent, or as servant or agent of another, to manufacture, sell or solicit or accept orders for, ship, consign, offer or expose for sale or have in possession with intent to sell, any article, product or compound which is or may be used as a substitute for butter and which is made by combining with milk or milk fats or any of the derivatives of either any fat, oil or oleaginous substance or compound thereof other than milk fat.

"(2) Any person violating this section shall, for the first offense, be punished by a fine of not less than fifty dollars nor more than five hundred dollars, and for each subsequent offense, by imprisonment in the county jail not less than ten days nor more than six months or by a fine of not

less than one hundred dollars nor more than five hundred dollars, or by both such fine and imprisonment.

"Section 2. This act shall take effect on September 1, 1925."

In determining whether or not the provisions of ch. 279 contravene the constitution of the state of Wisconsin or of the United States it is necessary to settle some preliminary questions. In the first place it is argued that ch. 279 does not prohibit the manufacture and sale of oleomargarine; that it only prohibits such manufacture and sale when milk or milk fats are combined with any fat, oil, or oleaginous substance. Under the evidence produced in this case this contention is little more than a quibble. There is not a scintilla of evidence that there has ever been upon the market in commercial form a substance known as oleomargarine which did not combine milk or milk fats with some oleaginous substance. It was proven upon the trial that a laboratory experiment had been performed which showed that a substance which was not a substitute for butter and did not possess the qualities of either butter or oleomargarine might be produced, and it is contended that this substance answers the technical definition of oleomargarine; that the manufacture of this substance is not prohibited and the act is therefore valid. There can be no doubt that ch. 279 had for its sole purpose the prohibiting of the manufacture and sale within the state of Wisconsin of oleomargarine as that term is defined by the laws of the United States and as it is ordinarily used and understood in commercial transactions. While the term "oleomargarine" is not used in the body of the act, the title of the act is "An act to create section 352.365 of the statutes, relating to the manufacture and sale of oleomargarine and other substitutes for butter." We shall therefore, in considering the questions raised, regard the statute as one which prohibits the sale and manufacture of oleomargarine as that term is known and understood both in law and in commerce.

It further appears without dispute that oleomargarine is a nutritious, wholesome, healthful food. While it is true that it does not possess all of the healthful properties of butter and is not in all respects a substitute for butter, it on the other hand contains no deleterious or unhealthful ingredients.

It further appears that while it is in fact a substitute for butter, it is sold upon its own merits and under such circumstances that every purchaser and every user is fully advised that he is purchasing or using, as the case may be, oleomargarine and not butter. The facts are disclosed in a very concise and accurate way by the testimony given by the defendant upon the witness stand. He testified substantially as follows:

"I have held the office of dairy and food commissioner of the state of Wisconsin for seventeen years. During that time I have had various analyses of oleomargarine made to determine its legal status. When the term 'oleomargarine' is used, we understand it to mean the product as defined under the federal law.

"At various times we have had analyses of oleomargarine made, and to the extent of my knowledge there never has been any of it that did not contain casein. My understanding is that the federal government insisted that milk was a constituent element of oleomargarine. I know of no product that enters into the manufacture of oleomargarine which is deleterious to health.

"I have not found oleomargarine to be noxious or unwholesome. It has elements of nutrition. It has some that are not contained in butter. I have no recollection of ever hearing any expert testify or say that oleomargarine was not nutritious, and as far as I know whole or skim milk is always used. I recall no complaints from purchasers of oleomargarine that they were not satisfied with it. Within the last five years I have known of no case where a purchaser has asked for butter and been sold oleomargarine.

"Limiting my answer to the question of public health, I know of no reason requiring the enactment of the law in question prior to 1925."

No one familiar with the matter will charge the defendant with any lack of intelligent zeal in the enforcement of laws relating to food and food products, and if there were violations of the law either with respect to the content of oleomargarine or its branding and sale, it is most probable that it would have come to the attention of the defendant.

Ch. 279 was passed in the exercise of the police power. It prohibits the carrying on of a legitimate, profitable industry and the sale of a healthful, nutritious food. This prohibition can only be justified upon the ground that it is necessary in order to protect the public health, public morals, public safety, prevent fraud, or promote the public welfare. As already indicated, the public health is not endangered by the manufacture and sale of oleomargarine and certainly no question of morals is involved. There is not the slightest evidence that the prohibition is justified in order to prevent fraud because under the evidence there is no fraud, and certainly there is not such a state of affairs as enables the court to take judicial notice of a fact which in five years has not come to the attention of the dairy and food commissioner.

It is quite probable that this case would not be here were it not for the decision of the United States supreme court in *Powell v. Pennsylvania,* 127 U. S. 678, 8 Sup. Ct. 992. That case seems to have turned upon a very narrow question. The defendant offered to show by expert testimony that the article for the sale of which he was being prosecuted was made from pure animal fats; that the process of manufacture was clean and wholesome, the article containing the same elements as dairy butter, the only difference between them being that the manufactured article contained a small portion of the fatty substance known as butterine; that this butterine existed in dairy butter in the proportion of from three to seven per cent., and in the manufactured article in a smaller proportion, and was increased in the latter by the

introduction of milk and cream; that this having been done, the article contained all the elements of butter produced from pure unadulterated milk or cream from the same except that the percentage of butterine was slightly smaller. All evidence in support of these facts was excluded.

In affirming the ruling of the trial court the supreme court of the United States said:

"It will be observed that the offer in the court below was to show by proof that the particular articles the defendant sold, and those in his possession for sale, in violation of the statute, were in fact wholesome or nutritious articles of food. It is entirely consistent with that offer that many, indeed that most, kinds of oleomargarine butter in the market contain ingredients that are or may become injurious to health. The court cannot say, from anything of which it may take judicial cognizance, that such is not the fact. Under the circumstances disclosed in the record, and in obedience to settled rules of constitutional construction, it must be assumed that such is the fact."

Proceeding upon that assumption the court sustained the conviction of Powell. Mr. Justice FIELD wrote a very strong dissenting opinion, which was ten years later to become the law. *Powell v. Pennsylvania, supra,* was decided in 1887. In 1897 the case of *Schollenberger v. Pennsylvania,* 171 U. S. 1, 18 Sup. Ct. 757, arose. In that case it was made to appear, as the fact was, that oleomargarine was a wholesome, nutritious, healthful article of food. While the *Schollenberger Case* related to interstate commerce, nevertheless the decision plainly implies that were oleomargarine an unhealthful, deleterious, and unwholesome article of food its importation might be prohibited. The court said:

"Conceding the fact [that oleomargarine may be adulterated], we yet deny the right of a state to absolutely prohibit the introduction within its borders of an article of commerce, which is not adulterated and which in its pure state is healthful, simply because such an article in the course of its manufacture may be adulterated by dishonest manu-

facturers for purposes of fraud or illegal gains. The bad article may be prohibited, but not the pure and healthful one."

So the basis of fact upon which the *Powell Case* rested, to wit, the presumption that oleomargarine was injurious and unhealthful, was entirely wiped out.

In the year 1898 arose also the case of *Collins v. New Hampshire,* 171 U. S. 30, 18 Sup. Ct. 768. By a statute of the state of New Hampshire all oleomargarine was required to be colored pink, and the court held that a state law which necessitates and provides for an adulteration of an article of commerce and required an importer to add a foreign substance to his article which is thereby rendered unsalable in order that he may be permitted lawfully to import and sell it, is an unlawful restriction of commerce. The court said:

"In a case like this it is entirely plain that if the state has not the power to absolutely prohibit the sale of an article of commerce like oleomargarine in its pure state, it has no power to provide that such article shall be colored, or rather discolored, by adding a foreign substance to it, in the manner described in the statute. . . . Although under the wording of this statute the importer is permitted to sell oleomargarine freely and to any extent, provided he colors it pink, yet the permission to sell, when accompanied by the imposition of a condition which, if complied with, will effectually prevent any sale, amounts in law to a prohibition."

The law was held unconstitutional.

Nor is *Powell v. Pennsylvania, supra,* saved by the ruling of *McCray v. U. S.* (1904) 195 U. S. 27, 24 Sup. Ct. 769. The statute under consideration in that case prohibited the sale of oleomargarine colored to resemble butter, and it was held that the statute was valid and that the states might, in the exercise of police power, absolutely prohibit the manufacture and sale of such an article. And so we have a statute in this state, the validity of which has been sustained, which prohibits the sale of oleomargarine colored to resemble but-

ter (sec. 352.37). *Essex v. State,* 170 Wis. 512, 175 N. W. 795. These decisions rest on the ground that the state has power to protect its citizens against fraud.

There is not the slightest intimation in *McCray v. U. S., supra,* that the sale of a lawful, nutritious, uncolored oleomargarine may be prohibited. The *Powell Case* remains authority as to the power of the state to prohibit the manufacture and sale of an adulterated, unhealthful, deleterious article, but now has no application to oleomargarine for the reasons stated. The courts now take judicial notice of the fact that oleomargarine is a healthful, nutritious food. *Braun & Fitts v. Coyne,* 125 Fed. 331; *People v. Arensberg,* 105 N. Y. 123, 11 N. E. 277; *State v. Hanson,* 118 Minn. 85, 136 N. W. 412.

The law enacted by the state of Pennsylvania prohibiting the sale of oleomargarine was subsequently repealed, and, so far as we are advised, there has not been and is not now upon the statute books of any of the other states a statute prohibiting the sale of uncolored oleomargarine, and its sale and transportation is expressly authorized by the United States.

It would seem that decisions could not make plainer the fact that any law which prohibits the manufacture and sale of uncolored oleomargarine violates the constitution of the United States and of the state of Wisconsin. In this connection we are moved to observe that the mandates of the constitution are just as binding upon the conscience of the legislator as upon the conscience of the judge. The constitution is the mandate of a sovereign people to its servants and representatives, and no one of them has a right to ignore or disregard its plain commands. Every officer, legislative and executive as well as judicial, is required by the constitution, as a condition of holding his office, to take a solemn oath to support it. It was not intended that the whole burden of that support should fall upon the judicial department. As a matter of fact it rests equally upon every department,

although it is in an especial way the concern of the judicial department because. it is the duty of the courts to declare and apply the law.   In a doubtful case the final responsibility is with the court, but in a case reasonably plain it is the duty of every officer to support it even though his act may have undesirable consequences to himself.

We are next urged to hold the act valid on the ground that the legislature, in order to protect the Wisconsin dairy industry from unfair competition, may prohibit the manufacture and sale of oleomargarine.   There is no basis in the evidence upon which a claim of unfair competition can be based.   The argument is addressed to the proposition that in order to promote one important industry the legislature may, in the exercise of its power to promote the general welfare, cripple or destroy another competing industry.   It has been supposed that the constitution was devised for the express purpose of withdrawing from legislatures the power to do that very thing.   The framers of our constitutions, particularly the earlier ones, were quite as zealous in guarding against encroachment upon personal liberty by legislatures as by executives.   The proposition urged violates at every point the theory of equality of citizens before the law. It is based upon a statement contained in *Sligh v. Kirkwood,* 237 U. S. 52, 61, 35 Sup. Ct. 501.   It is there said:

"It was competent for the legislature to find that it was essential for the success of that industry that its reputation be preserved in other states wherein such fruits (citrous) find their most extensive market.   The shipment of fruits so immature as to be unfit for consumption, and consequently injurious to the health of the purchaser, would not be otherwise than a serious injury to the local trade, and would certainly affect the successful conduct of such business within the state.   The protection of the state's reputation in foreign markets, with the consequent beneficial effect upon a great home industry, may have been within the legislative intent, and it certainly could not be said that this legislation has no reasonable relation to the accomplishment of that purpose."

John F. Jelke Co. v. Emery, 193 Wis. 311.

While this was said *arguendo,* it having been argued to the court that because fraud was perpetrated upon the citizens of other states to which Florida fruit was shipped, the legislature of Florida was powerless to act in the matter, it is nevertheless bottomed upon the established fact that the goods, shipment of which was prohibited, were unfit for human consumption, unhealthful, and deleterious as an article of food, thus bringing it clearly within the police-power field.   Under the facts proven in this case, whatever the economics of the situation may be, from the standpoint of constitutional right the legislature has no more power to prohibit the manufacture and sale of oleomargarine in aid of the dairy industry than it would have to prohibit the raising of sheep in aid of the beef-cattle industry or to prohibit the manufacture and sale of cement for the benefit of the lumber industry.   In some cases a proper exercise of the police power results in advantage to a particular class of citizens and to the disadvantage of others.   When that is the principal purpose of the measure, courts will look behind even the declared intent of legislatures and relieve citizens against oppressive acts where the primary purpose is not the protection of the public health, safety, or morals.   *Yick Wo v. Hopkins,* 118 U. S. 356, 6 Sup. Ct. 1064, 30 Lawy. Ed. 220, and cases cited in notes, p. 541.

In *Day-Bergwall Co. v. State,* 190 Wis. 8, 207 N. W. 959, the constitutionality of an act forbidding the sale of an article colored in conscious imitation of vanilla was sustained on the ground that it could not be said "that it clearly appears that the enactment has no substantial relation to a proper purpose, or that the act is not germane to the object and purpose of the legislation, which is to prevent fraud." No doubt the act operated in practical effect to protect the sale of vanilla and to diminish the sale of a synthetic product which was admittedly wholesome and healthful.   Upon the facts this was undoubtedly a very close case, but because it

was within the legislative field the court was bound to sustain the statute.

In this case it is not shown that it is necessary, in order to protect the public health or prevent fraud, to prohibit the sale of oleomargarine. Ch. 279 is therefore a void enactment.

*By the Court.*—Judgment affirmed. No costs to be allowed. Plaintiff to pay balance of clerk's fees.