LOCHNER, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 3—June 4, 1935.*

478

For the plaintiff in error there was a brief by *F. C. John,* attorney, and *I. A. Fish* and *W. H. Voss* of counsel, all of Milwaukee, and oral argument by *Mr. John.*

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, *William A. Zabel,* district attorney of Milwaukee county, and *Herman A. Mosher,* deputy district attorney, and oral argument by *Mr. Mosher.*

FOWLER, J.  The acts of the defendant involved were committed between June 2d and June 9, 1931.  They were

all connected and all done with a view to bringing about a single result, but the several offenses charged were based on different acts. The convictions fall under two heads: Violations of sections of the banking code, and violations of the statute against obtaining "money, goods . . . or other property" by false tokens or pretenses. Under the assignment of error, the only question for determination is whether the findings of guilty are warranted by the evidence. The sections of the banking code involved are secs. 221.39 and 221.17, Stats. Sec. 221.39 expressly makes each of several distinct acts, with intent as specified, an offense. By that statute any bank officer who, (a) embezzles, abstracts, or wilfully misapplies any money, funds, or credits of his bank with intent to defraud the bank, or (b) who makes any false entry in any book of the bank with intent to deceive any officer of the bank, or any person or agent appointed to examine into the affairs of the bank, commits a criminal offense. Sec. 221.17, so·far as material here, makes it a criminal offense for an officer· of a bank to make or cause to be made any false entry on the books of his bank with intent to deceive any person authorized to examine into the affairs· of the bank. It will be noted that the offense here declared is identical with the offense of false entries with intent to deceive any person authorized to examine into the affairs of the bank declared by sec. 221.39, Stats.

(1) Count 1 charges in the language of sec. 221.39, Stats., that the defendant on June 4, 1931, being president of the Shorewood Bank, by his issuance of the $13,732 check without funds on deposit to cover it, embezzled, abstracted, and misapplied moneys of said bank, and made false entries in the books thereof with intent to defraud the bank and to deceive the cashier and other officers of the bank and other persons and agents appointed to examine the affairs of the bank. It thus charges violations of the statute in each of the particulars above enumerated as (a) and (b).

(a) In, considering (a), we may disregard the word "embezzle" and merely consider whether the evidence supports the view that the defendant abstracted or wilfully misapplied the funds of the bank with intent to defraud the bank. It was held in *Sprague v. State,* 188 Wis. 432, 206 N. W. 69, that this is all that is necessary to constitute violation of sec. 221.39, Stats. In the *Sprague Case,* overdrawing his account by the defendant was considered an abstraction of funds from the bank. While this may not conclusively appear from the opinion and statement of facts in the report of the case, reference to the printed case and briefs makes it clear. The defendant in that case admitted overdrawing his account. The trial court charged that by the act admitted he thereby abstracted from the bank its funds to uses of his own or some other person. The court further charged that this being "without authority" amounted to a wrongful abstraction of the funds of the bank. This applies exactly to the instant case. The overdraft is admitted. There is no suggestion that the defendant had any authority from the board of directors of the bank to make the overdraft. The same may be said as to "wilful misapplication of the funds of the bank." If the defendant wrongfully abstracted the funds of the bank, he necessarily "wilfully misapplied" them, as he knowingly misapplied them. If the word "wilfully" implies anything more than knowingly in the connection in which it is used in the statute, whatever else it implies is covered by intent to defraud the bank. Whether the defendant applied the funds abstracted to his own use or the use of the Building Company is immaterial, as the one satisfies the same element of the offense as the other.

The defendant claims that because there is no evidence that the defendant had possession of the funds of the bank, proof is lacking of an essential element of an offense under the statute. This would be true if the only offense charged

were embezzlement, as physical possession is essential to that offense. But such possession is not necessary to abstraction of funds from a bank under sec. 221.39, Stats. It was definitely so ruled in the *Sprague Case, supra.*

This leaves for consideration upon (a) of this count whether the defendant in drawing the check did so with intent to defraud the bank. It must be conceded, and counsel for the defendant so conceded on the argument, that had six months elapsed before the defendant covered his overdraft, an inference of intent to defraud might rightly have been inferred. Does the fact that only four days elapsed, instead of six months, preclude that inference, especially as the overdraft was covered by kiting manipulations which were in themselves wrongful? Mere lapse of time cannot of itself make that done with intent to defraud which was in fact done without such intent. Neither can mere shortness of time make what was done with intent to defraud, done without such intent. There can be no question that had the Marine Bank not made the loan, and the Shorewood Bank had cashed the check on presentment by the Building Company, the Shorewood Bank would have been injured. Had this been the situation, the inference of intent to defraud the bank would have been clearly warranted. In *Agnew v. U. S.* 165 U. S. 36, 53, 17 Sup. Ct. 235, 41 L. Ed. 624, a case under a federal act of which our sec. 221.39 is a practical duplicate, the court approved the following instruction:

"The law presumes that every man intends the legitimate consequences of his own acts. Wrongful acts knowingly or intentionally committed can neither be justified or excused on the ground of an innocent intent. The color of the act determines the complexion of the intent. The intent to injure or defraud is presumed when the unlawful act, which results in loss or injury, is proved to have been knowingly committed. It is a well-settled rule, which the law applies

in both criminal and civil cases, that the intent is presumed and inferred from the result of the action."

An intent and expectation to make good an overdraft, without the present ability to do so, does not preclude the inference of fraudulent intent. When one deliberately and intentionally converts funds of which he is custodian to his own use, the offense of embezzlement is complete although he intends and expects to restore the funds wrongfully. converted. "From that [deliberate and intentional conversion] the law infers a wrongful and felonious intent." *Glasheen v. State,* 188 Wis. 268, 274, 205 N. W. 820. Intent to defraud is presumed in such case. The same would be true if one so converted such funds to the use of another. Upon like reason, when a president of a bank deliberately and intentionally abstracts the funds of the bank and converts them to the use of himself or another, the offense under sec. 221.39 is completed and the intent to defraud the bank is presumed, although he at the time intends and expects to restore the abstracted funds shortly or before the abstraction is discovered. The opinion in the *Glasheen Case, supra,* cites *State v. Kortgaard,* 62 Minn. 7, 64 N. W. 51, to the effect that the intent to defraud is presumed from the act of a bank officer in deliberately and intentionally committing the unlawful act of loaning to himself or overdrawing his account, and quotes:

"When an act, in itself indifferent, becomes criminal only when done with a particular intent, the intent must be proved; but when the act is, in itself, unlawful, the criminal intent is presumed from the intentional commission of the act."

In the instant case, the acts of the defendant in drawing the check and in concealing the overdraft on the bank's books by the false deposit slip and the false credit slip, were intentional and deliberate. These acts were unlawful. From

their intentional commission the law presumes the intent to defraud. In the situation here involved, the trial judge might properly infer an intent of the defendant to defraud the bank, notwithstanding his expectation by his subsequent wrongful acts to avoid injury to the bank and his intention to do so if he could. Bank officers cannot be permitted to make unauthorized loans to themselves or make overdrafts not authorized. Avoidance of permanent injury by restitution does not operate to render as no offense an offense that has already been committed. *Mueller v. State,* 208 Wis. 550, 243 N. W. 411. Neither do false entries and kiting manipulations which make it appear that funds were present to cover a check when it was presented when such funds were not so present. From not having funds present in the bank to meet his check of June 2d on June 4th when it was presented, the trial judge might rightly infer that the offense of abstracting the funds of the bank with intent to defraud it was committed by the defendant. If the trial judge so inferred, the cases of *Mueller v. State, supra,* and *State v. Kuenzli,* 212 Wis. 296, 249 N. W. 511, settle the correctness of the finding of intent to defraud. It is there held that while fraudulent conversion and criminal intent must be proved beyond a reasonable doubt to constitute embezzlement, they may be inferred from the commission of an unlawful act. The case there was one of embezzlement, rather than abstraction of funds, but the same intent to defraud a bank is involved in both cases. The drawing and delivery of the check, the making of the false deposit slip, and the making of the false debit slip, were all unlawful acts. From the deliberate and intentional commission of these acts the trial court might properly infer intent to defraud the bank.

(b) The defendant contends that the evidence does not warrant conviction of making false entries on the books of the bank with the requisite intent to deceive. It is urged

that the book entries were not false, because they correctly expressed the fact of the filing of the deposit slip and the debit slip. But the crime of making false entries under the National Banking Act, sec. 5209, U. S. Rev. Stats., of which our sec. 221.39 is, as above stated, practically a duplicate, "includes any entry on the books of a bank which is intentionally made to represent what is not true or does not exist, with the intent either to deceive its officers or to defraud the association. The crime may be committed personally or by direction." *Agnew v. U. S., supra,* p. 52. To the same effect are *United States v. Britton,* 107 U. S. 655, 663, 664, 2 Sup. Ct. 512, 519, 27 L. Ed. 520, and *United States v. Darby,* 289 U. S. 224, 53 Sup. Ct. 573, 77 L. Ed. 1137. It is said in the *Britton Case* :

"It is perfectly apparent that any false entry in any account book of a bank used in transacting its banking business is calculated to deceive" any person who may examine the entries.

There was in fact no deposit, and in fact no credit had been granted. The entries of the deposit and the debit were made on the bank's books by the direction of the defendant. Whether the defendant himself made out the slips as the cashier claimed, or whether the cashier made them by the defendant's direction as defendant claims, is immaterial. The entries were false entries and the defendant directed their entry. As to intent "to deceive any officer of the bank . . . or any other person, or any agent appointed to examine the affairs of such bank," declared in the statute, it seems only necessary to inquire why were the entries made if not to deceive anyone who might examine them, whether an officer of the bank or a bank examiner who might examine the bank's books? Officers of the bank and bank examiners are the only ones likely to examine the books of the bank. The effect of the false entries manifestly was to deceive as declared by the statute. No intent other than so to deceive is apparent.

As above indicated, we are of opinion that the trial court might rightly find the defendant guilty of both of the offenses covered by Count 1 of the indictment, based on sec. 221.39, Stats. The sentence upon this count must therefore be affirmed. Whether the trial judge found the defendant guilty of one or both offenses charged does not expressly appear. But we infer from the severity of the sentence, imprisonment of from three to eight years, that he found him guilty of both. This inference is further supported by the fact that his sentence on Count 3 of the indictment, which only involves the offense of making false entries in the books of the bank with intent to deceive any person authorized to examine into the affairs of the bank, was imprisonment from one to five years.

(2) Count 3 charges that the defendant, being president and director of the Shorewood Bank, on June 4th, wilfully and knowingly caused to be made false entries in the books of the bank with intent to deceive any person authorized to examine into the affairs of the bank. The charge is based upon sec. 221.17, Stats. Enough is said to justify conviction upon this count in (b) under Count 1 above. In *Hobbins v. State,* 214 Wis. 496, 253 N. W. 570, this statute was said to cover false entries with intent to deceive the bank examiners. What is said above in (b) under Count 1 is not inconsistent with the ruling of the *Hobbins Case* that the act there charged could not have deceived the bank examiners. The entry there involved was of a different nature, and the factual situation was clearly apparent from documents a bank examiner would necessarily examine in examining into the affairs of the bank. Had this charge not been covered by Count 1, the conviction would stand. But the part of sec. 221.39, Stats., relating to false entries with intent to deceive any person authorized to examine into the affairs of a bank expressly covers the offense declared by sec. 221.17. If the conviction under sec. 221.39 had been only for making false

entries with that intent, the defendant could not be subjected to separate trials merely because each of the statutes expressly declared in identical language the same act an offense. This would be double jeopardy. It is true, as claimed by counsel for the state, that one "may be prosecuted for each and every offense arising out of a transaction *where there are distinguishing elements in each offense." State v. Brooks,* 215 Wis. 134, 254 N. W. 374. But there are no distinguishing elements in the offense declared by sec. 221.17, Stats., and the offense declared by the last part of sec. 221.39. We have above construed the sentence under Count 1 as covering both offenses covered by sec. 221.39, Stats. It therefore covers the offense declared by sec. 221.17, and sentencing the defendant again for the same offense was improper. Because the sentence under Count 3 runs concurrently with that under Count 1, and the sentence under Count 1 is the longer, no prejudice resulted from the sentence under Count 3, as far as imprisonment is concerned. But the sentence under the latter count was unlawful and should be reversed. If we could deduce from the record that the court in imposing sentence under Count 1 did not include the offense last declared by sec. 221.39, we could affirm the conviction under Count 3. The strictly correct method of proceeding under an indictment or information based on a statute declaring more than one offense, is to have a separate finding as to each offense covered. Thus in the instant case, there should have been a separate finding as to each of the offenses (a) and (b) covered by sec. 221.39. This would have been necessary in case of submission to a jury; as a general verdict of guilty under Count 1 would have been open to the inference that some members of the jury might have found the defendant guilty of one of the offenses covered and some found him guilty of the other, and the twelve jurors might not have agreed upon a verdict of guilty as to either. Such a verdict would not

support a conviction. As in the instant case, the finding of the trial judge is not open to this inference, as he could not have failed to agree with himself, he must have reached a conclusion under what counts the defendant was guilty. The better way to frame a charge upon a statute covering different offenses, or making different acts an offense, is to charge each such act relied upon in a separate count. This will inform the defendant what charges he is to meet, and avoid a mistrial in case of a general verdict of guilty. The latter may be obviated, even under a general charge covering all acts covered by the statute, by submitting a separate verdict as to each act covered, but this through oversight is likely not to be done.

(3) Count 6 charges in effect that the defendant on June 8th "embezzled, abstracted and wilfully misapplied moneys" of the Shorewood Bank with intent to defraud the bank and the Mercantile Company, and made false entries in the books of the bank with intent so to defraud and to deceive the cashier and other officers of the bank and officers and agents appointed to examine into its affairs, by drawing the check of the Mercantile Company on the Shorewood Bank on June 6th when said company had insufficient funds to cover it, and sending it to the Marine Bank to the credit of the Shorewood Bank, and causing it to be presented to the Shorewood Bank on June 8th, and by causing a false entry of the debit against the Marine Bank to be made upon the books of the Shorewood Bank with such intent to deceive, knowing that the Marine Bank would not and could not enter on its books or authorize such debit until June 9th. Count 6, like Count 1, covers charges (a) and (b) as stated under Count 1.

While the transaction charged was connected with that of June 4th, and was a part of the scheme by which a fraud was perpetrated on the Shorewood Bank, if one was perpetrated,

it was a distinct transaction committed on a subsequent date, and if the facts warrant conviction upon the separate charge based upon the transaction the conviction should stand.

What is said under Count 1 about intent to defraud being properly inferred, if it is so inferred, from the circumstances although denied by the defendant and no injury actually resulted to the bank, applies here. The circumstantial evidence of intent to defraud is much weaker here than that to support a finding of such intent under Count 1, as only one day intervened between the entry of the debit on the Shorewood Bank's books and the granting of credit by the Marine Bank, and Mr. Lindsay of the Marine Bank testified that the defendant talked with him over the telephone respecting the credit on June 8th and the defendant also so testified. The defendant doubtless knew that the credit would not be actually given until June 9th, as the note was dated as of that day, and the credit would not be given by the Marine Bank until the day of the date of the note, and if the note was received on the 8th by the Marine Bank it would not be received in time for entry on that day's transactions and the credit would not be given until such entry was made. It seems probable that Mr. Lindsay promised on the 8th to accept the note and grant the credit, and that actual intent to defraud could hardly be inferred if this was the fact.

Intent to defraud the Mercantile Company is also covered by this count, but if intent to defraud the bank could not be justifiably inferred, then intent to defraud the Mercantile Company could not be. We would have difficulty in supporting the conviction under this count if the count covered only abstraction of funds with intent to defraud.

As to the false entry with intent to deceive, however, it seems plain that there was a technical violation of the statute in that regard. The debit slip filed with the Shorewood Bank was false, as credit had not in fact been given by the Marine

Bank when it was filed. The Marine Bank's credit slip was sent to the Shorewood Bank by mail on June 9th, and could hardly have been received before June 10th. The entry of the defendant's false debit slip was made upon the books of the Shorewood Bank on June 8th, and was made to offset the credits of the deposit slip to the Mercantile Company and the one to himself, and to make it appear to anyone examining the bank's books that the debit slip against the Marine Bank had been received when the deposit slips were filed. We cannot say that conviction thereon under Count 6 was improper. We might presume that the conviction was based upon the facts warranting conviction of false entry rather ·than abstraction of funds with intent to defraud the Shorewood Bank but for the fact that the sentence was for imprisonment from three to eight years. But as this conviction was proper under (b) of sec. 221.39, Stats., we must let it stand.

(4) Count 7 charges that the defendant on June 8th made false entries in the books of the Shorewood Bank with intent to defraud the bank and the Deposit Company by making and filing the false deposit slip to himself to reimburse himself for the amount theretofore paid by him upon his subscription for the stock of the Building Company, and made false entries with intent to deceive the cashier and officers of the bank and others authorized to examine into its affairs by filing the false debit slip against the Marine Bank and causing its entry of debit upon the books of the bank. ,

This count is limited to charging false entries on June 8th with intent to defraud and to deceive. The offense of making false entries on June 8th is charged in Count 6. The only differences between the false entry charged in these two counts is that in Count 6 the charge is of intent to defraud the bank and the Mercantile Company and in Count 7 it is of intent to defraud the bank and the Deposit Company, and in Court 6 the filing of the debit slip against the Marine Bank

is alleged, and in Count 7 the filing of the deposit slip in his own favor.

This duplication of charging the offense of making false entries is a mere splitting of hairs. The filing of the debit slip and the two deposit slips was a single transaction. The entry of the two deposit slips offset the entry of the debit slip and put the bank's books in balance. The entries having been made with intent to deceive, one of the two alternative requisite intents, only one of which is essential to constitute the offense, it is immaterial if they were also made with intent to defraud; and as it is immaterial if they were also made with intent to defraud, it is also immaterial if one entry was made to defraud the bank and the Deposit Company and the other with intent to defraud the bank and the Mercantile Company. Several offenses cannot be made out of a single matter of false entry because it was made with several different intents only one of which was necessary to create the offense. The situation is analogous to that of a defendant being charged with murder of a person by stabbing him with a knife and by striking him on the head with a bludgeon, and he committed both acts while the person was alive, and either act alone was sufficient to effect death eventually. The defendant would not be guilty of two murders merely because he committed both acts. The conviction upon this count should be set aside.

(5) Count 8 charges that on June 8th the defendant, being president of the Shorewood Bank, wilfully caused to be made false entries in the books of the bank with intent to deceive any person authorized to examine into the affairs of the bank. That this is a mere duplication, and is included in Count 7, appears from the discussion of that count. The conviction upon this count must be reversed.

(6) Counts 2, 5, and 10 may be treated together. They respectively charge that the defendant on June 4th, June 6th,

and June 9th, by acts done on these days, by false tokens and representations, and with intent to defraud obtained credits and moneys. These counts are based upon sec. 343.25, Stats. This statute contains the words "money, goods, wares, merchandise, or other property." That the defendant received *credit,* by use of the false tokens is clear, but the word "credit" is not contained in the statute. Obtaining credit is therefore not a violation of the statute. To constitute an offense under the statute, the thing procured "must actually pass from the hand of the defrauded person." There must be "actual physical tradition . . . to the defendant personally" or to some one "designated . . . to receive [it] for his benefit." *Bates v. State,* 124 Wis. 612, 616, 103 N. W. 251. Credit cannot be so passed. It is not capable of such tradition. It was held in *Rex v. Wavell,* 1 Moody, Cr. Cas. 224, under a like statute, that "obtaining credit to one's account from his banker" does not constitute the offense. It is stated in 2 Bishop, Crim. Law (9th ed.), § 480, that it is held that if the thing obtained is not money, or other article within the express terms of the statute, but merely a credit on account which may bring money, the offense is not created.

That obtaining credit by false pretenses does not fall within sec. 343.25 is inferentially supported by sec. 343.41, which makes the obtaining of credit by false representations under circumstances stated a separate offense. As said in *Pepin v. State ex rel. Chambers,* 217 Wis. 568, 259 N. W. 410, sec. 343.41 was designed to create a crime that did not exist under sec. 343.25. Where money is procured by reason of the credit given, the act may constitute a crime under both sections. *Laev v. State,* 152 Wis. 33, 139 N. W. 416. But if money is not received but only credit without money actually passing, as here, the offense, if any, is under the latter statute, and to constitute the offense under the latter statute, loss must result to the one granting the credit. In

Count 2 the credit is alleged as procured from the Shorewood Bank, and that bank sustained no loss. In Count 5 the credit is alleged as procured from the Marine Bank by depositing the $13,732 check of the Mercantile Company, but no misrepresentation was made by which that credit was granted to the Shorewood Bank upon the depositing of the check. Count 10 charges that the defendant by false tokens and representations obtained money and credit to the amount of $16,600 from the Marine Bank by delivery of the $16,600 note. But there is no allegation of loss to the Marine Bank, and without that allegation an offense under sec. 343.41, Stats., is not stated. Whether a charge of obtaining the $16,600 credit from the Marine bank under sec. 343.41 might have been supported if it had been made is beside the point. For such charge was not made and it was not contended upon the trial and is not here contended that the charge was based or could be supported under that statute. As no money was procured by the defendant by any of the transactions set out in Count 2, 5, or 10, the convictions upon each of those counts must be reversed.

*By the Court.*—The judgment and sentences of the municipal court upon Counts 1 and 6 of the indictment are affirmed; the judgment and sentences upon Counts, 2, 3, 5. 7, 8, and 10 of the indictment are reversed.