WILLE and another, Plaintiffs in error, vs. THE STATE, Defendant in error.

*January 15—February 9, 1932.*

For the plaintiffs in error there was a brief by *Charles Swidler* and *I. B. Padway,* both of Milwaukee, and oral argument by *Mr. Padway.*

For the defendant in error there was a brief by the *Attorney General, George A. Bowman,* district attorney of Milwaukee county, *A. J. Beyer,* deputy district attorney, and *J. E. McCarty,* assistant district attorney, and oral argument by *Mr. Beyer* and *Mr. McCarty.*

NELSON, J. The plaintiffs in error, hereinafter called the defendants, were convicted on four separate counts in which embezzlement of certain moneys of the Mercantile Finance

Service, Inc., a corporation, was charged (sec. 343.20, Stats.), and also on one count in which it was charged that they had received and possessed themselves of a certain sum of money of said corporation otherwise than in payment of a just debt or demand (sec. 343.37).

The first count charged embezzlement of $13,848.72 on or about the 23d day of October, 1926. The second count charged the embezzlement of $13,394.40 on or about the 23d day of April, 1927. The third count charged the embezzlement of $13,013.25 on or about the 23d day of October, 1927. The fourth count charged the embezzlement of $5,770 on or about the 23d day of April, 1928. The fifth count charged the defendants with having, on November 1, 1927, unlawfully received and possessed themselves of money of the corporation otherwise than in payment of a just debt or demand.

The facts involved are practically undisputed. The defendants are husband and wife. Prior to the year 1926 and for several years thereafter, they were engaged in the business of rendering services as accountants. Several years prior to 1926 they organized Wille & Company, a Wisconsin corporation. The defendants owned all of the stock of Wille & Company with the exception of one or two qualifying shares which were held by others. The business of Wille & Company was that of public accounting. Only a small amount of capital was necessary to operate the accounting business. Such business only required sufficient capital to meet the pay-roll and current bills and carry accounts for a reasonable time. The net worth of Wille & Company as of December 31, 1926, was $6,741.17 and the net profit for the year then ending amounted to $72.79. Its net worth as of December 31, 1927, was $4,859.51 and the net loss sustained by it for the year then ending amounted to $1,891.66. On December 31, 1928, its net

worth was $4,800.12 and its net profit for the year then ending amounted to $350.37.

In 1926 the defendants promoted the organization of a corporation known as Mercantile Finance Service, Inc. (hereinafter called the Finance Company). It appears that they gained the confidence of the chief stockholders in rendering efficient accounting services to them. They pictured to the stockholders the opportunity to make money through the instrumentality of a company organized to loan moneys on collateral security, such as conditional sale contracts, chattel mortgages, and other evidences of indebtedness. The opportunity which the defendants had as public accountants to possess themselves of first-hand knowledge regarding the financial responsibility of firms to whom they rendered services and who might be interested in borrowing moneys from a finance company was stressed as a further reason why such a company, when managed and operated by the defendants, would prove successful. The Finance Company seems to have had no difficulty in selling its common and preferred stock in the amounts of $30,000 and $48,165 respectively. The common stock was held by the defendants and Mr. and Mrs. Heidl and Mr. and Mrs. Lotspeich. Eleven thousand four hundred dollars of preferred stock was at one time issued to the defendant Flora E. Wille, but at the time of the audit, when the real condition of the Finance Company was discovered as hereinafter detailed, Mrs. Wille had only $200 of preferred stock in her possession.

Wille & Company and the Finance Company occupied the same offices. Flora E. Wille and William A. Wille were directors of the Finance Company and held the offices of president and treasurer and secretary respectively. They also held the same offices in Wille & Company. Checks issued by the Finance Company were signed by the defend-

ant Flora E. Wille and checks issued to Wille & Company were indorsed by said company, per William A. Wille. The funds of Wille & Company seem to have been disposed of largely on checks drawn by William A. Wille.

Even before the Finance Company was fully organized Wille & Company borrowed certain moneys from it and continued thereafter to borrow large sums of money from it. As hereinafter stated, the Finance Company was organized for the purpose of loaning money on collateral, although the articles of incorporation authorized the company, among other things, "to invest in or finance, or hold for investment, or otherwise, and to trade and deal in and to use, sell, pledge, or otherwise dispose of, the stock, bonds or other evidences of indebtedness of all kinds, either secured or *unsecured,* of any individual, partnership, association or corporation." It was generally understood by the stockholders that moneys would be loaned by the Finance Company only on collateral. The manner of doing the *bona fide* business of the Finance Company was as follows: In case a prospective borrower was the owner of collateral worth $3,000 and desired a loan, he could borrow the sum of $2,160 from the Finance Company on such collateral, the actual amount borrowed to be determined as follows: The Finance Company first deducted twenty per cent. of the value of the collateral as a depreciation reserve, which, in the case assumed, would amount to $600, leaving a net balance of $2,400. From the last amount a further deduction of ten per cent. would be made which represented the company's interest and service charge, which, in the assumed case, would amount to $240, leaving the net amount of $2,160 which could be borrowed. The borrower was required to make and deliver ten promissory notes aggregating the sum of money actually received by him, plus the amount of the service charge, which, in the as--

sumed case, would total the sum of $2,400. These notes were payable one to ten months respectively after date. When the notes were fully paid the collateral was returned to the borrower and the company thereby profited to the extent of $240. The plan just detailed was unquestionably the plan for making loans adopted by the company. The books of the company reveal that they were made up of forms permitting the showing of such a set-up,—that is to say, the value of the collateral, the twenty per cent. depreciation reserve, the ten per cent. interest and service charge, the net amount loaned and the listing of the ten notes aggregating the sum of the amount loaned and the service charge. At the time the audit was made by the accountants selected by the other stockholders, the books of the Finance Company showed that the actual withdrawal of cash on checks drawn to the order of Wille & Company and received by it amounted to $56,173.60; that there was turned back to the Finance Company by Wille & Company $9,718.48, which was applied partly in repayment of loans and partly in payment of service charges. At the time of the audit referred to, Wille & Company was indebted to the Finance Company in a sum exceeding $79,000, more than $57,000 of which was owed on instalment loans and more than $21,000 on open account for service charges. Notes in the total sum of $61,956.67 were turned over to the auditors at the time of the investigation. The defendants had the entire management and control of the Finance Company and received substantial salaries from it. They had sole charge of and kept the books of the corporation. Directors' meetings were occasionally held but seldom at the offices of the Finance Company. Eight per cent. dividends were paid on the preferred stock for the years 1927 and 1928, and some of the stockholders received preferred dividends for the year 1929, although the books of the Finance

Company revealed that it lost $7,115.68 during the fiscal year ending September 30, 1928, and $7,844.20 during the year ending September 30, 1929. The books of the corporation when turned over to the auditors showed a complete record of all loans made by the Finance Company to Wille & Company. The record of loans to Wille & Company was not unlike the records of *bona fide* loans made to others on collateral. In other words, the record showed, as to the loans made to Wille & Company, the amount of the collateral, the depreciation reserve, the service charge, and the net amount loaned, although there never was any collateral given by Wille & Company to the Finance Company. The records in respect to the collateral of Wille & Company and its value were wholly fictitious and fraudulent. It is very clear, from the whole record, that the Finance Company, managed by the defendants, loaned to Wille & Company, which was owned and managed by them, large sums of money to which neither they, as individuals, nor Wille & Company were in any sense entitled, and which, considering their individual financial worth and the former financial history of Wille & Company, neither they nor Wille & Company could ever hope to repay. It is undisputed that the proceeds of the loans made by the Finance Company to Wille & Company were treated by the defendants as their individual funds and that they checked said moneys out of Wille & Company largely, if not entirely, in payment of their individual debts and expenses. The moneys belonging to the Finance Company were made available to them individually, under the pretense and cover of loans made to Wille & Company, which were used for their individual purposes.

Wille & Company was but a mere instrumentality through and by means of which the natural persons in control thereof carried out their acts. *Milbrath v. State,* 138

Wis. 354, 361, 120 N. W. 252. When the fraudulent loans were discovered the defendants seemed willing enough to turn over such of their individual properties as they had and thereby to that extent to make restitution to the Finance Company. This conduct, however, was quite immaterial on the question of their guilt. *Guenther v. State,* 137 Wis. 183, 187, 118 N. W. 640.

The defendants contend that, since all moneys which Wille & Company received were evidenced by notes given by Wille & Company to the Finance Company and a full and complete account of such loans was kept by them as officers of the Finance Company, and since, when discovered, they freely turned over the books to the accountant and to the attorney representing the other stockholders, no fraudulent conversion of the moneys or criminal intent, necessary to the crime of embezzlement, could be properly found by the jury. We think, however, under the facts and circumstances of this case, that the jury was fully warranted in looking beyond the mere form of the several transactions for the purpose of determining the real nature thereof, and in inferring that the system pursued by the defendants was in fact fraudulent and resulted in a fraudulent conversion by them of the moneys of the Finance Company.

While fraudulent conversion and criminal intent are necessary elements of the crime of embezzlement, we entertain no doubt that the jury was fully warranted in finding that such elements existed in the transaction involved in the charges preferred. The defendants occupied positions of trust in the Finance Company and dealt with themselves in violation of their trust. They hid their identity under the corporate name of Wille & Company in dealing with themselves. They obtained, under the guise of such loans, excessively large amounts of cash belonging to the Finance Company which they must have known neither they nor Wille & Company could ever hope to repay. The entries in the books of account kept by them as officers of the Finance

Company were fraudulent in showing that collateral had been given. The mere fact that the amount of the collateral was mentioned, the depreciation reserve set up, the service charge deducted, and the net amount loaned, was well calculated to deceive and could have been set up with no other intent and no other purpose. Many notes of Wille & Company which matured from time to time, though unpaid, were renewed by new notes set up on the books of the corporation according to the collateral plan. A careful reading of the record fully satisfies the conscience of this court that the evidence is amply sufficient to support the verdict of the jury.

The defendants further contend that the court erred in its instructions to the jury. We find ourselves unable to determine from the defendants' brief in just what respect they deem the instructions improper. We fail to find in them anything which is improper or incorrect or in any way out of harmony with the law relating to embezzlement as set forth in *Guenther v. State, supra; Milbrath v. State, supra; Stecher v. State,* 202 Wis. 25, 231 N. W. 168.

The defendants further contend that the court erred in admitting the testimony of certain witnesses who were not stockholders of the Finance Company, as to transactions with Mrs. Wille involving the loaning of considerable sums of money to them by her. Such testimony was no doubt received in evidence as tending further to show the financial condition of Mrs. Wille and her complete inability ever to repay or assist in repaying moneys taken by the defendants from the Finance Company. While the admission of such evidence may have been of doubtful relevancy, we perceive in its admission nothing of a prejudicial nature.

The defendants further contend that the court erred in not permitting their counsel to cross-examine one C. R. Dineen on a matter upon which he had not theretofore been examined. The defendants evidently desired to prove by him their apparent willingness to turn over to him, as

attorney for the Finance Company, such properties as they still had, by way of restitution. The witness had not been examined as to the incident upon which the defendants desired to examine him. The questions asked were clearly not cross-examination. The defendants had the opportunity to call him in their behalf if they considered his testimony material to the issue. This they failed to do. In the absence of the State first having gone into the matter, no reason is perceived why the defendants were denied any right to which they were entitled.

Being of the opinion that the jury was amply justified in finding the defendants guilty of the several charges contained in the information and finding no prejudicial error in the record, it becomes our duty to affirm the judgment.

*By the Court.*—Judgment affirmed.