550

MUELLER, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 13—June 20, 1932.*

For the plaintiff in error there was a brief by *Lehner &*
*Lehner* of Princeton, and oral argument by *Philip Lehner,*
*Sr.* and *Philip Lehner, Jr.*

For the defendant in error there was a brief by *R. W.*
*Peterson,* district attorney of Green Lake county, the *Attor-*
*ney General,* and *J. E. Messerschmidt,* assistant attorney

general, and oral argument by *Mr. Peterson* and *Mr. Messerschmidt.*

NELSON, J. The material facts are not in dispute. At the times mentioned in the information the defendant was the assistant cashier of the Princeton State Bank and the vice-president of the National Bank Supply Company of Milwaukee.

As to the first count it appears that shortly before June 2, 1927, the defendant sent his personal check for $1,000, drawn on the Princeton State Bank, to Paine-Weber & Company of Milwaukee to pay for stock purchased by him. On June 2d defendant's check and other checks were sent to the Princeton State Bank by the National Exchange Bank of Milwaukee. Draft to cover the accompanying cash letter of the National Exchange Bank, which included the defendant's $1,000 check, was promptly issued and mailed to the National Exchange Bank. The defendant's check was carried by the bank as a cash item until June 16th following, when it was taken care of by defendant's giving to the bank a note for $1,000 indorsed by F. C. Krueger, the cashier. This note was approved by the board of directors at its next meeting, and was renewed from time to time. At the time of the trial it was unpaid.

As to the second and third counts it appears that prior to October 7, 1929, the defendant sent his personal check for $3,500 to Paine-Weber & Company of Milwaukee in payment of stocks purchased by him. That check was drawn on the Princeton State Bank. On October 7th, when that check and other checks were received by the Princeton State Bank, a draft to cover was sent to the National Exchange Bank. On October 25th the defendant, by telegram, directed the Marine National Bank of Milwaukee to pay $3,500 to Paine-Weber & Company, which request was complied with. This payment was made for

stocks purchased by defendant, and the Marine National Bank charged the account of the Princeton State Bank with the amount of such payment. These transactions were not entered in the books of the Princeton State Bank. The canceled checks were evidently carried as cash items. On November 29th both of the $3,500 items were taken care of by a collateral note given to the bank by N. R. Mueller, a brother of the defendant. That note was approved by the board of directors at its first meeting thereafter. That note was renewed from time to time and, although unpaid at the time of the trial, it was paid by defendant's brother prior to the time that the court found the defendant guilty.

As to the fourth count it appears that numerous checks drawn on the Princeton State Bank by the National Bank Supply Company of Milwaukee, of which the defendant was vice-president, were paid by the Princeton State Bank, although the Supply Company had insufficient funds. Those checks accumulated until December 26, 1928, when they amounted to $15,000. From December 26, 1928, to June 26, 1929, those checks were carried as cash items and the books, during that time, falsely stated the amount of said checks to be cash. This $15,000 item was taken care of by the father of the defendant some time prior to the trial. No interest on the checks carried as cash items was paid to the bank.

The defendant earnestly contends (1) that the evidence is insufficient to support the conviction of the defendant on the first three counts of the information because neither felonious intent nor fraudulent conversion, necessary elements of the crime of embezzlement, was proven beyond a reasonable doubt, and (2) that the evidence is insufficient to support the conviction of the defendant on the fourth count of the information because it was not proven beyond a reasonable doubt that the $15,000 false cash balance was made with intent to injure and defraud the bank or to

deceive persons appointed to examine the affairs of the bank, since the father of the defendant paid to the bank the amount of the checks and the bank was not in fact injured or defrauded.

The only question, therefore, is whether the evidence is sufficient to support the conclusion of the court and the judgment of conviction rendered.

It is not disputed that the defendant, while assistant cashier of the Princeton State Bank, issued his checks on said bank, which were paid by the subsequent issuing of the bank's drafts; that funds of the bank were thus withdrawn; that the moneys so taken were used by defendant to purchase stocks; that the moneys were withdrawn from the bank without the knowledge of the board of directors; that the defendant carried as cash items checks of the Supply Company aggregating the sum of $15,000 from December 26, 1928, to June 26, 1929; and that the books of the bank falsely stated a cash balance which included said $15,000.

The defendant contends that in doing the acts mentioned he had no felonious or criminal intent fraudulently to convert to his own use the funds of the bank and had no intent, in carrying the checks of the Supply Company as cash, to defraud or injure the bank or to deceive the examiners. Great stress is laid upon the fact that on June 2, 1927, when it is claimed he embezzled the $1,000, he was solvent and reasonably entitled to a loan of $1,000, especially when his note was indorsed by the cashier. If the defendant's conviction and sentence rested wholly upon the charge of embezzling the $1,000 mentioned in the first count of the information, we should have grave doubts as to the propriety of sustaining the conviction on that count. But since we feel impelled to sustain the convictions on the other three counts of the information, and since the separate sentences involve similar terms running concurrently, the de-

fendant is not in any way prejudiced by the conviction or sentence under the first count.

As to the second, third, and fourth counts, the defendant earnestly contends that, since the $7,000 note given by the defendant's brother took care of the two $3,500 checks, and since the father of the defendant paid to the bank $15,000 to take care of the checks and indebtedness owing the bank by the Supply Company, the bank suffered no loss, was not defrauded, and consequently the defendant cannot be held guilty. We think the contention unsound. The giving of a promissory note in payment of a shortage does not expunge or contradict the guilt of one who is already guilty of a completed embezzlement. *Guenther v. State,* 137 Wis. 183, 187, 118 N. W. 640. One converting public funds is guilty of embezzlement even though he restores them before the wrongful conversion is discovered. *Glasheen v. State,* 188 Wis. 268, 273, 205 N. W. 820, citing *State v. Baxter,* 89 Ohio St. 269, 104 N. E. 331, 52 L. R. A. N. S. 1019.

While fraudulent conversion and criminal intent are necessary elements of the crime of embezzlement and must of course be proven beyond a reasonable doubt, still the fraudulent conversion and the felonious intent may be properly inferred from the commission of an unlawful act. That the defendant intentionally, at the times mentioned, unlawfully took from the bank, moneys of the bank aggregating the sum of $7,000, is entirely free from doubt. The intentional taking of the funds of the bank under the circumstances is amply sufficient to support an inference of felonious intent. In *Glasheen v. State, supra,* the following language found in *State v. Kortgaard,* 62 Minn. 7, 16, 64 N. W. 51, was approved:

" 'If the fraudulent intent is not to be presumed from the commission of an unlawful act, it would be very difficult in any case to prove the intent to embezzle on the part of

a bank officer who had unlawfully appropriated bank funds to his own use. When an act, in itself indifferent, becomes criminal only when done with a particular intent, the intent must be proved; but when the act is, in itself, unlawful, the criminal intent is presumed from the intentional commission of the act.' "

To hold that a charge of embezzlement cannot be sustained when it appears that the money converted has been returned or settlement or restitution otherwise made, either before or after discovery, would introduce into the criminal law of this state a proposition wholly unsound and unsupported by any well considered authority. 20 Corp. Jur. p. 455. See *Wille v. State,* 207 Wis. 163, 240 N. W. 823. . We think the same principles are applicable to defendant's contention that his conviction on the fourth count cannot be sustained because the cash shortage was made good by his father and the bank was not defrauded or injured.

The offense was complete long before payment by the father of the amount of the checks carried as a cash balance, and such payment did not wipe out the crime.

We conclude that the evidence was unquestionably sufficient to support the conclusion of the court that the defendant was guilty of the offenses charged in the second, third, and fourth counts of the information. This being true, the judgment may not properly be disturbed. *State v. Hintz,* 200 Wis. 636, 229 N. W. 54; *Parke v. State,* 204 Wis. 443, 235 N. W. 775.

Complaint is made that the sentences imposed are excessive. They are clearly within the statutes which provide punishment for embezzlement or false entries. Secs. 343.20 and 221.39. While there are circumstances which might have justified greater leniency, we are without power to reduce the sentence.

*By the Court.*—Judgment affirmed.