(No. 22618.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES B. MUNDAY, Plaintiff in Error.

*Opinion filed December 19, 1934.*

FRANCIS M. LOWES, HARRY EUGENE KELLY, and WILLIAM M. KELLY, (KELLY, PRATT & ZEISS, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, HENRY E. SEYFARTH, and MARSHAL V. KEARNEY, of counsel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

An indictment in this case, consisting of three counts, was returned in the criminal court of Cook county on December 1, 1931. The first count charged the defendant with feloniously converting to his own use a certain check of the value of $1100, the property of the State of North Dakota, alleged to have been entrusted to him as bailee. The second count charged the defendant with being an agent in the employ of the State of North Dakota and

with feloniously embezzling the same check, which was alleged to have been delivered to him by virtue of such employment. The third count charged the larceny of the same property, but it needs no consideration in this opinion as there was no evidence to sustain it. Upon a trial the defendant was found guilty and his motions for a new trial and in arrest of judgment were overruled. Having been sentenced on the verdict he prosecutes this writ of error.

In 1925 the State of North Dakota enacted a law for the purpose of re-establishing the North Dakota Mill and Elevator Association, providing funds for its business, providing for its control, management, etc., and repealing certain acts. (Laws of N. Dak. 1925, chap. 163.) This act recited that it was for the purpose of encouraging agriculture, and that to that end it was desirable that the State should engage in the handling of grain and the manufacture and sale of flour and its by-products. It provided for the establishment and operation of a system of State owned elevators and flour mills under the name of North Dakota Mill and Elevator Association, which is also referred to in the evidence and exhibits as State Mill and Elevator and State Mill and Elevator Company. It provided that the title to all property acquired should be in the State of North Dakota, "doing business as the North Dakota Mill and Elevator Association." It also provided that the association should have power to make contracts, to sue and be sued, to purchase, sell and convey real and personal property as might be necessary to carry out the purposes of the act, to locate and maintain the places of business of the association, and to make and enforce orders, rules, regulations and by-laws for the transaction of its business. It further provided that the business of the association might include anything that any private individual or corporation might lawfully do in conducting a similar business, except as therein restricted; that all business should be conducted in the name of the association, and that "title to property

pertaining to the operation of the association shall be obtained and conveyed in the name of the State of North Dakota, doing business as the North Dakota Mill and Elevator Association." The Governor was made manager, "with all the power and authority of both the board of directors and the general managing officer of a business corporation," and the act also provided that it should be liberally construed. Under the provisions of this act C. B. Munday & Co., Inc., an Illinois corporation, was appointed representative for the elevator company for the Chicago territory and acted as such from some time in 1928 until about the return of the indictment, in 1931. The defendant, C. B. Munday, was a stockholder in and president of C. B. Munday & Co. Inc. The North Dakota Mill and Elevator Association furnished cards showing its Chicago representative to be "C. B. Munday & Company, Inc.," and advertised that fact in a publication known as *The Northwestern Miller*. The evidence does not prove that the defendant, as an individual, ever was or acted as an agent in the employ of the State of North Dakota or of the North Dakota Mill and Elevator Association, or that he as an individual was ever bailee of any property belonging to the State of North Dakota or the North Dakota Mill and Elevator Association.

Under the first count of the indictment it was incumbent upon the People to prove that the check claimed to have been embezzled was entrusted to the defendant as bailee, that it was the property of the State of North Dakota, and that the defendant feloniously converted it to his own use. The evidence showed that Eitel, Inc., purchased flour from the State Mill and Elevator Company and drew its check to the order of C. B. Munday & Co., Inc., in the sum of $1100 in connection with certain items of flour sold. It was further proved that this check was deposited in the bank account of C. B. Munday & Co., Inc. It was then proved by the former cashier of the bank that

by various withdrawals the account was reduced to $670 at the close of business on the day the check had been deposited and that on the close of business the following day it was reduced to $553.63. There was no evidence as to what the withdrawals were for or to whom they were payable and nothing to indicate that the defendant personally received any part of the funds represented by the check.

A great deal of argument is devoted to the question of whether or not the North Dakota Mill and Elevator Association is a corporation; as to whether or not the State of North Dakota was the actual owner of the check in question; as to whether or not the State of North Dakota or its creature, the North Dakota Mill and Elevator Association, could transact business in Illinois without being licensed as a foreign corporation; as to the admissibility of certain evidence tending to show the good faith of the defendant, and other questions which we deem it unnecessary to consider.

In the absence of proof that the defendant was either the bailee or agent of the State of North Dakota, as alleged in the indictment, the prosecution would necessarily fail. Likewise, in the absence of proof that he feloniously and fraudulently converted the check in question to his own use there could be no conviction. (*People* v. *Stevens, ante,* p. 391.) In both of these essential matters there was a complete failure of proof. In *People* v. *Parker,* 355 Ill. 258, we said, on page 286: "The evidence must establish, beyond all reasonable doubt, that the defendant feloniously and fraudulently converted to his own use or took and secreted with intent so to do, without the consent of his principal, the money or property in question in order to justify a conviction for embezzlement.—*McElroy* v. *People,* 202 Ill. 473; *Ross & Co.* v. *Innis,* 35 id. 487."

On this point the People contend that where an individual does business through a corporation he cannot hide be-

hind the corporation, and rely upon *Wille* v. *State,* 207 Wis. 163, 240 N. W. 823. The rule contended for by the People might be found to apply in many cases but not in this one, where the corporation itself was the agent. In the *Wille case* the defendant and his wife organized a corporation which they called Wille & Co. to engage in the accounting business and themselves owned practically all of the stock. They later organized another corporation called the Mercantile Finance Service, Inc., in which there were other stockholders and which was in the business of lending money on security. Wille and his wife, while acting as directors of the investment company, loaned a large sum of money to Wille & Co. and caused the records of the investment company to show that collateral was deposited to secure the loan, whereas, in fact, no collateral was put up. It was proved, without dispute, that the proceeds of the loans were taken out by the defendants personally, and that the corporation, Wille & Co., was merely an instrumentality for their use in carrying out their fraud. The case is manifestly different from the one before us. The documentary evidence in this record clearly shows that the corporation was the agent and the checks were made payable to this corporation. There is no evidence that any of the funds went to the defendant personally, as was established beyond dispute in the *Wille case.* The only proof in this record showed that the $1100 check was payable to C. B. Munday & Co., was deposited to the account of C. B. Munday & Co., and that on the following day that account did not contain that much money. The corporation in this case was not a mere device, but was in reality the chosen agent and bailee of the North Dakota Mill and Elevator Association.

Another case relied upon by the People, also from the Supreme Court of Wisconsin, is *Milbrath* v. *State,* 138 Wis. 354, 120 N. W. 252. In that case the defendant received certain funds for investment which he turned over to a

corporation organized by him, without knowledge of the owner of the fund. It is not in point. *People* v. *Stevens, supra.*

The judgment of the criminal court of Cook county will be reversed.

*Judgment reversed.*