McGEEVER, Plaintiff in error, vs. THE STATE, Defendant in error.

*October 10—November 4, 1941.*

*Henry J. Lockney* of Waukesha, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, *Norris E. Maloney,* district attorney of Dane county, and *Henry H. Behnke,* assistant district attorney, and oral argument by *Mr. Maloney* and *Mr. Platz.*

FRITZ, J. The errors assigned by the plaintiff in error, James D. McGeever, are that the court erred (1) in denying his motion to dismiss; (2) in refusing to admit certain evidence; (3) in failing to submit separate verdicts; (4) in refusing to set aside the verdict; and (5) in denying defendant's motion for a new trial.

In January, 1938, Elizabeth Hackett, who owned a residence in Madison, subject to a mortgage to the Home Owners' Loan Corporation (hereinafter referred to as "HOLC"), on which a foreclosure judgment had been entered, retained McGeever as her attorney to get an extension of the redemption period. The court granted an extension for one year on a

rental basis of $60 per month, and subsequently for an additional year. In September, 1939, HOLC advised her that the extensions were invalid, and subsequently she entered into an agreement under which HOLC agreed to accept $70 per month for six months, and she made the first payment. Thereafter on various occasions, commencing on December 22, 1939, she paid to McGeever money in varying amounts until she had paid $505, for which he gave receipts to her, some of which were marked "For payment to Chicago office of HOLC." Her testimony is to the effect that as she made those payments they were to be sent to the office of the HOLC in Chicago, in accordance with its agreement to accept $70 per month; and that between September, 1939, and March, 1940, McGeever informed her as to alleged negotiations and propositions made between him and the Chicago office of HOLC to enable her to redeem the property and continue to occupy it. She received some letters from the HOLC stating that no progress was being made in negotiations and finally stating on March 10, 1940, that the foreclosure proceedings would be resumed. Thereafter the foreclosure proceedings were concluded by a sale of the premises and the confirmation thereof, and finally the HOLC obtained a writ of assistance. On September 1, 1940, she moved to another place which she leased with an agreement to purchase negotiated through George Nichols, a real-estate agent. Although McGeever continued to accept such moneys from Miss Hackett in sums totaling at $155, between June 27, 1940, and July 22, 1940, the record shows that he had entered into a stipulation with the counsel for HOLC that if redemption or reinstatement was not accomplished by June 21, 1940, the sale would be confirmed and that a writ of assistance could be issued forthwith with a stay on the writ to July 1, 1940. Miss Hackett testified that it was not until December 30, 1940, that she learned that none of the money paid by her to McGeever to pay to the HOLC had ever been sent to it at Chicago. She then made complaint at the office of the district attorney of Dane county

and, after an investigation, a warrant was issued for the arrest of McGeever. Some hours before the actual issuance of the warrant, but after he had been questioned in the district attorney's office, McGeever sent the money by messenger to George Nichols with the instructions that it be turned over by him to Miss Hackett. She testified also that McGeever had told her in the latter part of September, 1940, that she was going to receive about $200 from the HOLC to be paid either in twenty monthly payments of $10 or in ten monthly payment of $20. Subsequently, in an explanation made in the district attorney's office, McGeever denied saying that $200 would be returned to Miss Hackett, but stated that he said if it was necessary to pay an increased rental, she could draw on what she had and pay them $10 to $20 a month more. However at the trial McGeever testified that his statement on that point was,—

". . . it would be possible for us to use $100 or so, 100 or 200, from the accumulated money on hand and if we could secure a substantial extension of her option she could replace that money for the down payment from the income as it came in each month."

In addition, there are statements and denials by McGeever in his testimony because of which there are conflicts and inconsistencies in the evidence in relation to the above-stated matters and also in other respects, but in a statement given by him at the district attorney's office, during the investigation and prior to the issuance of the warrant, he admitted his intermingling of Miss Hackett's money with the funds of his law firm, McGeever & McGeever, and that her money had been subjected to his use without her knowledge. On cross-examination on the trial, he testified that he had put part of her money in the American Exchange Bank of Madison with his firm's funds, and that he had put the balance in the firm's cashbox in the office with other moneys and papers. Subsequently he testified that he was mistaken and that he had no bank account and the firm had no bank account at any

time during the period of his transactions with Miss Hackett; and then on cross-examination he again admitted that he intermingled her money with the funds and also that he had used the funds without authority.

In view of the facts that appear from the evidence stated above, which the jury could consider credible, and, particularly, in view of McGeever's admissions as to his intermingling of Miss Hackett's moneys with other funds, and his unauthorized and unlawful use thereof for his own purposes without her knowledge or consent, the jury was well warranted in finding him guilty beyond a reasonable doubt of the fraudulent conversion and embezzlement of the $505 in question. Such unauthorized intermingling and use of her money by McGeever for his own use and benefit, and otherwise than for the purpose for which it was left by her in his possession and received by him, admitted finding that there existed a fraudulent intent on his part to convert the money to his own use and thus defraud Miss Hackett at the time of the unauthorized intermingling and use. As we said in *State v. Kuenzli,* 208 Wis. 340, 347, 242 N. W. 147—

"the deposit and subsequent use of the funds by defendant for his own benefit may properly form the basis for an inference of felonious intent. If such an intent did exist at the time of those acts, even a contemporaneous intent to pay back the money at a later time would be of no legal consequence."

One may convert money of another to his own use by paying it out on his private or personal debts (*Guenther v. State,* 137 Wis. 183, 118 N. W. 640; *Milbrath v. State,* 138 Wis. 354, 120 N. W. 252) ; and the subsequent restoration of the fund embezzled or the payment of the shortage does not expunge or conclusively contradict the guilt of one who had completed the embezzlement. The repayment of money unlawfully converted is material only in so far as it may bear on the defendant's intent. *Glasheen v. State,* 188 Wis. 268, 205 N. W. 820; *Guenther v. State, supra; Wille v. State,*

207 Wis. 163, 240 N. W. 823; *Mueller v. State,* 208 Wis. 550, 243 N. W. 411.

Defendant's contention that the court erred in refusing to admit certain evidence is based upon a ruling which excluded testimony offered by him to show that the market value of the mortgaged property was so low that it was inadvisable for Miss Hackett to redeem it by paying the amount required by HOLC. McGeever claims that the offered testimony was relevant and very material on the question of whether the jury should believe Miss Hackett's version that the moneys received from her were to be used in making payments monthly to HOLC, or should believe his version that she had become convinced she could not redeem on the basis of the payments required, and that therefore the moneys were to be used only when necessary to prevent eviction while endeavoring to get a two-year agreement, and that otherwise they were to be saved for purchasing another property. At best, defendant hoped to establish that it was not reasonable to believe that Miss Hackett really intended to redeem at $11,000 property which had a much lower market value and that, therefore, her purpose in leaving the money with McGeever was otherwise than to make the required monthly payments to HOLC. But, even if such difference as to her purpose had been proven, it would be in relation to a matter which, at best, had but a very slight bearing, if any, upon the crucial issue as to whether the money received by defendant to use for Miss Hackett's purpose, whatever it was, was used by him for his own private purpose and benefit without her knowledge or consent. If he did that, the market value of the property was immaterial no matter how unreasonable, in view of its low market value, it would have been for her to pay the amount required to redeem, or how impossible it was for her to raise that amount. Moreover, in view of McGeever's testimony as to what he claimed the transaction to be and other evidence as to the income and disbursements in relation to the property, and

Miss Hackett's financial inability to carry the loan, and other matters affecting the value of the property in so far as they tended to show whether it was unreasonable for her to really intend to redeem by paying the required amount, the offered testimony as to value would have been merely cumulative on but a collateral matter. Under the circumstances the exclusion of the evidence in question did not constitute prejudicial error.

In assigning as error the failure to submit separate verdicts "as to each of the separate and independent conversions," McGeever contends that the general verdict returned does not fit the proof or the issues raised by the evidence; that although the prosecution combined several separate and distinct offenses under one charge, or as one offense, there was a complete, separate, and independent offense each time there was a failure to remit money paid in for monthly rent; and that no statute or decided case permits the grouping of these as one offense, or the conviction of defendant for embezzlement of the total sum. These contentions cannot be sustained. At the close of the trial the court inquired whether there was any objection to submitting as forms for a verdict—

"We, the jury, find the defendant, James D. McGeever, guilty in manner and form as charged in the information;" and

"We, the jury, find the defendant, James D. McGeever, not guilty."

McGeever's attorney then said,—

"I have no objection to that form of verdict. . . . I have no objection to putting it all in one verdict, because there isn't any dispute under the evidence."

Thus the defendant waived any objection to the form of the verdict used in submitting the issues to the jury. Moreover, the defendant was not prejudiced by the form of verdict. As there was no dispute regarding the amounts of money involved

and the same proof as to fraudulent conversion was applicable to both counts, it was not necessary to have the jury find specifically what amounts of money were embezzled; nor to submit separately as to each of the two counts, inasmuch as under the proof defendant was either guilty on both or not guilty on either count. And since but one sentence was imposed, the judgment does not have to be reversed if the evidence was sufficient to sustain a conviction on either count, even though it was insufficient as to the other. 23 C. J. S. p. 1089, § 1403 (d). In combining and lumping the several sums received and embezzled by McGeever within each six-month period into a single offense in the information and then subsequently imposing upon conviction a sentence on the basis of the lump sums, there was rightly followed the practice authorized in such prosecutions by sec. 355.31, Stats. 1939. See *Secor v. State,* 118 Wis. 621, 631, 632, 95 N. W. 942; *State v. Burke,* 189 Wis. 641, 646, 647, 207 N. W. 406; *Anderson v. State,* 221 Wis. 78, 265 N. W. 210.

In assigning error in the court's denial of his motion for a new trial, McGeever contends that he was prejudicially affected by the facts that a juror, Horace Wood, had not disclosed that, in addition to being a farmer, he was employed also as a dance-hall inspector for two years before the trial under the supervision of the district attorney and the sheriff; and that, by reason thereof, he was disqualified to serve as a juror. This contention likewise cannot be sustained. There was no proof of any concealment or deception, or otherwise improper or prejudicial conduct on the part of Wood. Even if he may have been entitled under sec. 255.02 (1), Stats., to claim exemption from service as a county officer or constable, he was not rendered ineligible or disqualified thereby to serve as a juror. Moreover, persons selected and accepted as jurors are presumed qualified and the burden of proving the existence of a disqualification is upon the party alleging it. 35 C. J. p. 244, § 176. When a defendant has the op-

portunity to question every person called as a juror as to his qualifications and neglects to do this and fails to exercise his right of challenge, then "he must, in cases not capital, be presumed to have waived all objections which do not tend to impeach the justice or fairness of the verdict." *State v. Vogel,* 22 Wis. 471, 472. Under the circumstances and without any showing to the contrary, it cannot be presumed that the trial court abused its discretion in concluding that Wood's part-time employment as a dance-hall inspector did not influence his judgment as a juror. *Kohler v. West Side R. Co.* 99 Wis. 33, 36, 37, 74 N. W. 568; *Kelso v. Kuehl,* 116 Wis. 495, 496, 93 N. W. 455.

McGeever further contends the court erred in not granting a new trial on the ground of alleged newly discovered evidence by which he intended to refute testimony given on the trial by A. J. Busscher, an employee of HOLC office at Chicago, that he had a conversation there with McGeever on only September 9, 1939, and had no personal contact with him in January, 1940, as McGeever testified on the trial. By the newly discovered evidence McGeever proposed to show that he registered at the Morrison Hotel in Chicago on March 24, 1940, and there met a Mr. and Mrs. Moore, and then took their file and Miss Hackett's file from his portfolio and told them of his efforts at HOLC office; and to also show by testimony of A. J. Busscher that McGeever might have made further visits at that office although the files and records disclosed only one visit. The proposed newly discovered evidence did not require the court to grant a new trial. As the purpose thereof was to show merely the defendant's presence in Chicago on a certain day, it was substantially similar to proof of an alibi. As alibi testimony, such as this, is in relation to matters which must have been within the knowledge of the defendant at the time of the original trial, it is generally held that it is not properly within the definition and scope of "newly discovered" evidence. *Simmons v. State,* 167 Wis.

36, 39, 166 N. W. 313. Moreover the question of McGeever's presence in Chicago was again but a collateral issue as to which the evidence would be but cumulative. As the question whether a new trial should be granted on the ground of newly discovered evidence under such circumstances rests largely in the discretion of the trial court, and its decision will not be disturbed in the absence of a clear abuse of that discretion (*Sweda v. State,* 206 Wis. 617, 627, 628, 240 N. W. 369), and there does not appear to have been any such abuse of discretion herein, there is no basis for concluding that there was any prejudicial or reversible error in this respect.

*By the Court.*—Judgment affirmed.