**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**HENRY CURTIS SAMPSON, Defendant**

Crim. No. 465/1995

Territorial Court of the Virgin Islands

Div. of Saint Croix

March 10, 1997

Michael A. Joseph, Esq., Christiansted, St. Croix, U.S.V.I., *for Defendant*

Darryl D. Donohue, Esq., (Asst. Attorney General, Department of Justice), Christiansted, St. Croix, U.S.V.I., *for Plaintiff*

CABRET *Judge*

## MEMORANDUM OPINION

This matter is before this Court on defendant's motion for a new trial based on newly discovered evidence pursuant to Terr. Ct. R. 135 and Fed. R. Crim. P. 33.[1] Defendant argues that a new trial is warranted because he was denied his Constitutional right to a fair and impartial jury by a juror's failure to disclose certain information during the *voir dire.*

On April 27, 1996, a jury returned a verdict of guilty of "murder in the first degree" and "possession of a deadly weapon during the commission of a crime of violence." A judgment of conviction was entered against him on July 2, 1996, and a timely notice of appeal was filed on July 12, 1996. On December 4, 1996, the parties filed a stipulation for a stay of the appeal. On December 5, 1996, the Appellate Division of the District Court granted the stay so that this Court could hear defendant's motion for a new trial based on newly discovered evidence.

## FACTUAL BACKGROUND

Mr. George Farchette ("Farchette") served as a juror in defendant's trial. At all relevant periods of the trial, Farchette worked as a Supervising Enforcement Officer for the Department of Finance. Farchette's position qualified him as a peace officer.[2] Defendant claims that juror Farchette's failure to disclose that he was a peace officer during the voir dire examination prejudiced his right to exercise peremptory challenges, thus requiring a new trial.

---

[1] It should be noted that on June 21, 1996, defendant filed a Petition for Writ of Habeas Corpus. Oral arguments were heard on September 25, 1996, wherein this Court, declining to rule on said petition, found that the Writ was not the appropriate vehicle for defendant's claims. Instead, following *Rubenstein v. United States,* 227 F.2d 638, 642 (10th Cir. 1955), this Court has decided to treat the Writ as a motion for a new trial based upon newly discovered evidence.

[2] See Title 5 V.I.C. § 3561 (1995 Pocket Supplement).

Several weeks after trial, defendant's trial counsel, on June 13, 1996, observed Farchette dressed in a law enforcement uniform while he sat in attendance during the criminal trial of Raphael Phillips.[3] On that same day, subsequent to his observation of Farchette at court, defense counsel returned to his law office and directed Natalie Vidale, a summer employee, to look into defendant's file for Farchette's juror questionnaire. After Vidale was unsuccessful in locating the juror questionnaire, defense counsel then directed her to retrieve a copy of Farchette's juror questionnaire from the Court. Upon review of Farchette's juror qualification questionnaire, defendant discovered that Mr. Farchette is the "Acting Supervising Enforcement Office," (sic) and his duties include "enforcing collection of Government delinquent accounts." Farchette's questionnaire also responded affirmatively to the question of whether he is or was a law enforcement officer.[4]

## DISCUSSION

### A. Newly Discovered Evidence

■ Ordinarily, before a trial court may order a new trial due to newly discovered evidence, the movant must satisfy the following five-part test: (a) the evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal. *United States v. DiSalvo*, 34 F.3d 1204, 1215 (3d Cir. 1994) (*quoting United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir. 1976)). However, "newly discovered evidence" which will support a motion for a new trial is not limited to evidence which is likely to lead to an acquittal. In fact, other courts have treated motions premised on after discovered evidence of jury misconduct, as motions for a new

---

[3] Phillips, a relative of the victim, Carol Sampson, was on trial for the murder of a relative of defense counsel, Michael Jospeh, Esq.

[4] *See* Joint Exhibit # 1.

trial based upon newly discovered evidence. *See Rubenstein v. United States*, 227 F.2d 638, 642 (10th Cir. 1955) (evidence of; *Holmes v. United States*, 284 F.2d 716 (4th Cir. 1960) (evidence of improper communication by court official to members of jury considered "newly discovered evidence"); *United States v. Mitchell*, 410 F. Supp. 1201 (D.D.C. 1976); *United States v. Jones*, 597 F.2d 485 (5th Cir. 1979) (evidence of bribe offer to juror considered "newly discovered evidence"); *United States v. Wander*, 465 F. Supp. 1013 (W.D.Pa. 1979) (evidence that juror concealed information during voir dire considered "newly discovered evidence"). Of course, the evidence proffered as "newly discovered," must have, in fact, been discovered since the end of the trial, and the defendant's failure to discover this information at an earlier time must not be the result of a lack of diligence. *See United States v. Pelullo*, 895 F. Supp. 718 (E.D.Pa. 1995); *United States v. Bolinger*, 837 F.2d 436 (11th Cir. 1988). Defendant has premised his motion on an allegation of jury misconduct and the Court will consider its merit.

## B. Test of Juror Bias

■ Defendant's motion is premised on the contention that had Farchette disclosed the fact that he was a peace officer, defendant would have challenged him for cause or he would have used a peremptory challenge. However, "the fact that [the] juror might have been peremptorily challenged by defendant is not alone sufficient to reverse the defendant's conviction." *Baca v. Sullivan*, 821 F.2d 1480, 1483 (10th Cir. 1987) (*quoting Williams v. United States*, 418 F.2d 372, 377 (10th Cir. 1969). The standard for determining when inaccurate juror responses necessitate a new trial is set forth in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984). In *McDonough*, the Supreme Court held that:

> to obtain a new trial . . . a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause.

34

*McDonough*, 464 U.S. at 556.[5] The *McDonough* Court also stated that "the motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *McDonough*, 464 U.S. at 556.

*1. Failure to Answer Material Question Honestly*

██ The first prong of the McDonough test requires a determination of whether the juror failed to answer honestly, a material question on voir dire. *Id. See also Bankatlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467 (11th Cir. 1992). However, under *McDonough*, "an honest though mistaken answer is insufficient to require a new trial." *United States v. Bertoli*, 854 F. Supp. 975, 1111 (D.N.J. 1994) (*citing McDonough*, 464 U.S. at 555). Defendant argues that Farchette had a duty to disclose his present employment, as it was raised implicitly by the following questions:

> Is there anyone on the panel who has a family member or a friend who is currently employed or was previously employed by the Department of Justice of the Virgin Islands or any other department concerned — of the Government of the Virgin Islands concerned with criminal prosecution and law enforcement? *See* Tr. Apr. 22, 1996, at 54.
>
> Is there anyone on the panel who is currently employed by any law enforcement agency of the federal government, that is, the office — for example, such as the office of the United States Attorney, the post office department, the U.S. Customs and that would be — let me narrow that question — employed by any department that is concerned with criminal prosecution or law enforcement?" *See* Tr. Apr. 22, 1996, at 73.

Defendant views Farchette's silence in response to these questions as a dishonest concealment of his present employment as a peace

---

[5] Although the standard articulated in *McDonough* was reached in the civil context, it has been consistently applied to motions for new trial by criminal defendants. *See, e.g., United States v. Calabrese*, 942 F.2d 218 (3d Cir. 1991); *United States v. Langford*, 990 F.2d 65 (2d Cir. 1993); *See Cannon v. Lockhart*, 850 F.2d 437 (8th Cir. 1988); *Baca v. Sullivan*, 821 F.2d 1480 (10th Cir. 1987); *United States v. O'Neill*, 767 F.2d 780 (11th Cir. 1985); *United States v. Pelullo*, 895 F. Supp. 718 (E.D.Pa. 1995).

35

officer. This contention is unpersuasive, because the questions, as posed, did not require Farchette to disclose the fact that he is a peace officer. The first question seeks to elicit information, not about the jurors' present or past employment, but about their family and friends who are or were employed by the Government of the Virgin Islands in departments concerned with criminal prosecution or law enforcement. Farchette's failure to mention his present association with the Department of Finance cannot be considered a dishonest answer to that question.

The second question, like the first, did not oblige Farchette to respond, as it specifically sought to elicit information about the jurors' present employment in the Federal Government with any department that is concerned with criminal prosecution or law enforcement. Again, Farchette's failure to mention his present position with the Government of the Virgin Islands cannot be considered a dishonest answer to that question. Indeed, jurors cannot be faulted for failing to disclose certain information when they were never asked during the course of *voir dire* to make such disclosures. *See United States v. Aponte-Suarez*, 905 F.2d 483 (1st Cir. 1990); *United States v. O'Neill*, 767 F.2d 780 (11th Cir. 1985). Additionally, Farchette's juror questionnaire was always available to defendant as evidenced by defense counsel's ability to retrieve a copy of Farchette's questionaire at the Court upon seeing Farchette dressed in a law enforcement uniform. Furthermore, defendant does not cite to any authority, and this Court's research has not uncovered any cases which support the position that a juror's failure to volunteer information suffices to satisfy the first prong of the *McDonough* test. As there is no indication in the record to date, that Farchette failed to answer honestly "a material question," a new trial is not warranted on this basis alone.

Having concluded that Farchette did not fail to answer honestly the questions of the Court, it is not necessary to reach the issue of whether disclosure of his employment, if given, would have warranted the granting of a challenge for cause at the close of voir dire. However, in order to insure that defendant is given the benefit of every doubt, the Court should consider whether the information Farchette withheld, had it been revealed on *voir dire*, would have entitled defendant to a challenge for cause.

36

## 2. *Valid Basis for Challenge for Cause*

■ The second prong, that a correct response would have provided a valid basis for a challenge for cause, requires a showing of actual bias, either by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed." *United States v. Perkins*, 748 F.2d 1519, 1532 (11th Cir. 1984) (citing *United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir. 1976)). Bias may be inferred where a juror deliberately conceals information. However, if a juror does not deliberately conceal information, actual bias must be shown. *United States v. Patrick*, 965 F.2d 1390 (6th Cir. 1992). "Actual bias may be said to exist where there is sufficient evidence of a juror's prejudiced state of mind." *United States v. Haynes*, 398 F.2d 980, 984 (2d Cir. 1968).

In the present record of this case, there is no indication that Farchette deliberately withheld the fact that he is a peace officer. Farchette answered on his juror questionnaire that he worked as a Supervising Enforcement Officer for the Department of Finance. Accordingly, defendant must make a showing of actual bias. Absent an express admission of bias by Farchette, the Court's analysis shall focus on "proof of specific facts showing such a close connection to the circumstances at hand."

Actual bias may be presumed by specific facts showing a close connection to the circumstances at hand. In this case, defendant argues that actual bias may be presumed because, as a peace officer, Farchette should have been automatically excluded from the jury. In essence, defendant argues that Farchette, as a peace officer, is the functional equivalent of a police officer. Specifically, defendant argues that Farchette 1) has the authority to execute warrants of arrest, search for stolen property, and make arrests without a warrant; 2) was trained for 18 weeks by members of the Police Department in the use of firearm weapons, self-defense, and making arrests; and 3) has developed an affinity or natural bond with law enforcement officers. In support of his argument, defendant cites *State v. Cooper*, 291 S.C. 332, 353 S.E.2d 441 (S.C. 1986), *overruled on other grounds, State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (S.C. 1991), for the proposition that Farchette was not qualified for jury duty. The court in *Cooper*, relying in part on a South

Carolina Statute,[6] held that a highway patrolman was the functional equivalent to deputy sheriffs, which are *excluded* under the statute, and therefore, the trial court erred in not disqualifying the patrolman from the jury when the defendant challenged the patrolman for cause.

Defendant's reliance on *Cooper* is misplaced, as he erroneously uses the word "exempted" in his discussion of *Cooper*. "Exemption" is an improper characterization of the South Carolina Statute which specifically "excludes" classes of persons from jury duty. Exclusion is the denial of entry or admittance, whereas exemption is a freedom from a duty or service or a privilege. *See* Black's Law Dictionary 506, 513 (5th ed. 1979). Moreover, South Carolina has an "exemption" statute in addition to its "exclusion" or "disqualification" statute, and the South Carolina courts have interpreted the exemption statute to mean a privilege and not a disqualification. *See State v. Matthews*, 291 S.C. 339, 353 S.E.2d 444 (S.C. 1986) (citing *State v. Graham*, 79 S.C. 116, 60 S.E. 431 (1908)).

Title 4 V.I.C. § 472 (2) specifically exempts "members of the fire and police departments of the Territory." It has long been established in this jurisdiction that exemption does not mean automatic disqualification or exclusion. *In re Garcia*, 1 V.I. 196 (D.C.V.I. 1929). This allowance for exemption is a "privilege to be exercised by the juror and not by the parties to the action." *Id.* Courts in other jurisdictions with similar exemption statutes have also interpreted the provision for exemption as being a personal privilege of the juror, which no one but the juror could waive, and is in no way an automatic disqualification. *See McGeever v. State*, 239 Wis. 87, 300 N.W. 485 (Wis. 1941); *United States v. Caldwell*, 8 Alaska 117 (Ala. 1929); *Burns v. State*, 12 Texas Ct. App. 269 (Tex. 1882). In addition, Title 4 V.I.C. § 472 does not, either literally or by implication, exempt peace officers. As the Government has stated, a plausible explanation for the sole listing of members of the Virgin Islands fire and police departments in subsection (2) of § 472 is the fact that

---

[6] Pursuant to S.C.Code Ann. § 147-820:
   No clerk or deputy clerk of the court, constable, sheriff, probate judge, county commissioner, magistrate, or other county officer or any person employed within the walls of any courthouse **shall** be eligible as a juryman in any civil or criminal case. (emphasis added).

their responsibilities require them to be on emergency call on a twenty-four (24) hour, seven-day-a-week basis. To have a firefighter or a police officer sitting in a jury for a protracted period of time would affect the public safety since individuals who have a critical responsibility to the community would be tied up. Thus, defendant's reliance on the Virgin Islands exemption statute is misplaced and fails to demonstrate a sufficient nexus to establish actual bias.[7]

■ Furthermore, defendant's basic contention that peace officers are covered by Title 4, section 472(2) of the Virgin Islands Code, in that they are the functional equivalent of police officers must fail. In *State v. Cooper*, it is clear that highway patrolmen are functionally equivalent to deputy sheriffs in that both exercise similar duties and responsibilities and that their functions entail constant reciprocity. In the instant matter, the same cannot be said of Farchette, in his capacity as an enforcement officer for the Department of Finance, and police officers. Farchette's position as Supervising Enforcement Officer requires him to supervise and manage the activities of an enforcement unit engaged in the collection of multiple categories of delinquent accounts receivable for the Virgin Islands Government. His duties included, but are not limited to, the following:

> 1) Implementing and directing the functional and personnel activities for the enforced collection of delinquent accounts for a particular enforcement unit. Also examines records of enforcement activities to ensure individual efficiency;
> 2) Following through and insuring continuity in the maintenance of proper controls and guidelines for the handling of cash and the efficient flow of work within an enforcement unit;
> 3) Contributing to the formulation of a strategic work plan to be utilized in assigning field personnel on a particular island to various geographic areas and in

---

[7] See Tr. Sept. 25, 1996 at 41-42.

determining the distribution of categories of revenues to be collected;

4) Analyzes and reviews financial statements in evaluating financial condition and earning-capacity of taxpayers in determining ability to make full or installment payments;

5) Preparing preliminary budget data for an enforcement unit, as well as statistical and other reports. Also approves statements of remittance as required;

6) Training, counseling and evaluating filed personnel on the proper performance of their duties and on collection methodology;

7) Drafting correspondence for own signature or for signature of supervisor;

8) Attending court hearings on behalf of the Government;

9) Performing duties required as a peace officer; and

10) Performing other related duties as required.[8]

Police officers, on the other hand, perform on a daily basis a number of responsibilities including, but not limited to, 1) executing warrants; 2) making arrests; 3) searching for stolen property; and 4) responding to accidents, scenes of crime, and other emergency situations. Although Farchette may have the powers to execute arrest warrants and search for stolen property, he has not been known to partake in these duties in the course of his employment as a Finance Enforcement Officer. For example, Farchette testified that although he has responded to traffic accidents, he has done so rarely, voluntarily and not on a formal directive. Accordingly, law enforcement officers for the Department of Finance cannot be considered the functional equivalent of police officers and thus are not covered by 4 V.I.C. § 472(2).

However, assuming for the sake of argument, that a peace officer is the functional equivalent of a police officer, "one's status as a law enforcement officer in and of itself is insufficient to require disqualification as a juror in a criminal case." *Commonwealth v.*

---

[8]See Defendant's Exhibit 2.

*Jones*, 477 Pa. 164, 383 A.2d 874, 876 (Pa. 1978). Additionally, it has been held that a holding of implied bias to disqualify jurors because of their relationship with the Government is impermissible. *Dennis v. United States*, 339 U.S. 162, 70 S. Ct. 519, 94 L. Ed. 734 (1950). *See also United States v. Wood*, 299 U.S. 123, 57 S. Ct. 177, 81 L. Ed. 78 (1936). In *Commonwealth v. Colon*, 223 Pa. Super. 202, 299 A.2d 326, 328 (Pa.Super. 1972), the Superior Court of Pennsylvania stated that "an enforcement officer is capable of professional objectivity in considering the case of a defendant accused of a crime against society." *Id.* at 328. *See also Cavness v. United States*, 187 F.2d 719 (9th Cir. 1951) (court held that no actual bias or prejudice on the part of a juror will be presumed from the mere fact of his being a reserve police officer). Moreover, it cannot be argued that Farchette, as a peace officer with the Department of Finance, has developed an affinity or natural bond with police officers. As stated before, there is little or no reciprocity between the duties of Farchette and those of police officers. Additionally, there is no evidence that Farchette's position places him in repeated contact with police officers. Thus the bond that is apparent in *Cooper* is simply inexistent in the instant matter.

Therefore, the second prong of the *McDonough* test, like the first, is not satisfied in this case: Sampson has not demonstrated that had the fact that Mr. Farchette's employment as a peace officer been disclosed during voir dire, there would have been a valid basis for a challenge for cause.

## CONCLUSION

In the absence of a showing of actual bias, or an intentional withholding of the facts, this Court cannot presume that there was inherent prejudice as a matter of law. As there has been no violation of defendant's Sixth Amendment right to a trial by a fair and impartial jury, his motion for a new trial is denied.

41

## ORDER

In accordance with the attached memorandum opinion of even date, it is hereby

ORDERED that defendant's motion for a new trial is DENIED.

DONE AND SO ORDERED this 10th day of March, 1997.